BANK OF ORANGE *vs.* A. BROWN and five others.

In an action
against six, as
proprietors of a
steam-boat, in
which they
were charged
DEMURRER to plea in abatement. The declaration contains nine counts. The first count states that the defendants were the owners of a certain vessel or steam-boat called the Constella-
as *common carriers,* for the loss of property put on board for transportation, and the *gravamen* was stated to have arisen from a breach of duty, *it was held,* that a plea in abatement that there were 54 other proprietors, who were *jointly* liable, was bad, and judgment of *respondeas ouster* was awarded.

An action solely *upon the custom,* is an action of *tort,* in which all or any number of the owners of a vessel, coach or any kind of conveyance used by common carriers may be sued, and on a verdict against all or a part only of those against whom the action is brought, judgment may be rendered.

The plaintiff has his choice of remedies, either to bring *assumpsit* or *case;* but when one or the other form of action is adopted, it will be governed by its own rules. If the plaintiff states the custom, and also relies on an undertaking, general or special, the action, though it may be said to be *ex delicto quasi ex contractu,* is in reality founded on the contract, and will be treated as such.

tion, whereof R. G. Cruttenden was master, used and navigated upon the Hudson river, between the cities of New-York and Albany, for the conveyance and transportation of goods and chattels for hire and reward, touching on her passages up and down the river at the village of Newburgh, for the landing and delivery of freight, goods and chattels; that the plaintiffs, to wit, the president, directors and company of the Bank of Orange County, on the 15th November, 1827, at the city of New-York, caused to be delivered to the captain a parcel of bank notes of the value of $11,250, to be safely and securely carried and conveyed in the said vessel or steam-boat from the city of New-York to the village of Newburgh, and there to be delivered to one William Phillips, for certain freight and reward; and the said master then and there took and received the same for the purposes aforesaid; and although the said vessel or steam-boat on the same day safely arrived at Newburgh, and no dangers of the seas, nor the act of God, nor the enemies of the people, &c. prevented the safe carriage of the said bank notes, yet the plaintiffs averred that the said defendants, or their said agent, not regarding their duty in that behalf, but contriving, &c. to deceive and defraud the plaintiffs, did not deliver the said bank notes to the said William Phillips, but so negligently, carelessly and improperly conducted the carriage and conveyance thereof, that for want of due care in the defendants, their servants and agents, the said bank notes were wholly lost to the plaintiffs. The second count states that the defendants were *common carriers* of goods and chattels, according to the custom of the state, and that the bills were delivered to them to be carried from New-York to Newburgh, for certain freight and reward; that although the vessel arrived, the bills were not delivered, but were lost for the want of due care, and through the negligent, careless and improper conduct of the defendants, their servants and agents. The third, sixth and eighth counts are substantially like the first, and the fourth, fifth and seventh counts are like the second count. The ninth count is in *trover*. To the ninth count, the defendants pleaded the general issue, and to the first eight counts they, put in a plea in abatement, that on the day in the said

several counts of the declaration mentioned, 54 other persons, (naming them,) together with the six defendants, were joint owners and proprietors of the vessel or steam-boat in the declaration mentioned; and that if any such injury happened as is complained of in the said several counts, the said 54 persons are *jointly* liable with the defendants for the same, as such joint owners and proprietors, &c. The plaintiffs demurred to the plea in abatement, and the defendants joined.

The demurrer was very ably argued by *Talman*, for the plaintiffs, and *B. F. Butler*, for the defendants. A great number of cases bearing upon the question, whether in an action of this kind the non-joinder of other parties can be plead in abatement, which have arisen and been decided in the English courts, from that of *Boson* v. *Sandford*, to be found in 1 Shower, 29 and 101, and 2 id. 478, which first came before the court of king's bench in 1687, to the case of *Butherton* v. *Wood*, 5 Broderip & Bingham, 54, decided in 1821, and all the cases, upon the point arising in this court, were cited and commented upon by the counsel: but as many of the authorities cited are reviewed in the opinion of the chief justice, it is deemed unnecessary to attempt a sketch of the arguments of the counsel.

*By the Court*, SAVAGE, Ch. J. This is an action on the case against six defendants as common carriers, alleged to be the owners of the steamboat Constellation, charged in the first eight counts of the declaration with having received bank bills to a large amount for transportation from the city of New-York to the village of Newburgh, which it is averred were lost through the want of due care, and by the negligent and improper conduct of the defendants and their servants. The ninth count is in trover, to which the defendants have pleaded the general issue. To the first eight counts they have pleaded in abatement that fifty-four other persons, together with the defendants, are joint owners and proprietors of the steam-boat Constellation, and are *jointly* liable for any damage the plaintiffs may have sustained. The plaintiffs have demurrer, and the question presented for adjudication is, whether it is necessary to *join* all joint owners in this suit?

UTICA,
August, 1829.

Orange Bank
v.
Brown.

It is not denied, that in an action against joint contractors as such, all must be joined; and if the action be brought against a part only, those who are sued may plead in abatement the non-joinder of the other joint contractors. Nor is it denied that, in an action for a *tort*, the plaintiff may prosecute all or any portion of those concerned in such tort. But an action on the case against common carriers, upon the custom of the realm, seems in England not to be considered always as belonging entirely to the class of actions arising *ex contractu*, nor to those arising *ex delicto*, but is said sometimes to be a case arising *ex delicto quasi ex contractu.*

Every person who undertakes to carry, for a compensation, the goods of all persons indifferently, is as to the liability imposed, to be considered a common carrier. There is an implied undertaking on his part to carry the goods safely, and on the part of the owner to pay a reasonable compensation. No special agreement is necessary to enable the owner to maintain assumpsit against the carrier for breach of his duty, nor to enable the carrier to maintain assumpsit for his compensation. There is therefore a perfect contract implied between the carrier and his employer. As this contract is implied by law, so also where any person becomes a common carrier by professing to carry for all persons indifferently, the law imposes upon him duties and liabilities arising out of his public employment, and imposes upon the employer the liability of making compensation. Considerations of public policy, and not agreements between the parties, have ascertained the duties and fixed the limits of the liability of common carriers; and for any omission or neglect of duty an action lies without stating any consideration or contract between the parties; for the negligence is the cause of action, and it is not necessary to state or rely upon an assumpsit. (*Coggs* v. *Bernard,* 2 Ld. Raym. 909.) There may be, and often is a special contract made with a common carrier, and such special contract is to control; but without any agreement whatever, the bare delivery of goods to the carrier, imposes upon him the obligation to dispose of them according to the directions which he receives; and a neglect to comply with such directions subjects him to an action,

because says Lord Holt, "A neglect is a deceit to the bailor ; for when he entrusts the bailee upon his undertaking to be careful, he has put a fraud upon the plaintiff by being negligent, his pretence of care being the persuasion that induced the plaintiff to trust him ; and a breach of a trust, undertaken voluntarily, will be a good ground for an action." (2 Ld. Raym. 919.) This was said in relation to Lord Holt's sixth class of bailiments, where the bailee acts without compensation ; but applies with equal if not greater force to his fifth classification, where the bailee acts for a reward.

The form of action against a common carrier, is a question which has been considerably agitated in the English courts, and has been different as the *gravamen* was supposed to arise upon a breach of public duty, or the breach of mere express promise. Each form has its advantages and disadvantages. If assumpsit is brought, or the action be laid as arising upon contract, it may be abated for the non-joinder of proper parties ; but it survives against the personal representative, and the common counts may be joined in the declaration. If the action be laid as arising *ex delicto*, and founded on the custom, the suit does not abate for the non-joinder of all the proper parties ; and, in a proper case, a count in trover may be joined. "The present usage," says Mr. Jeremy, in his Law of Carriers, p. 117, "sanctions the principles and adopts the advantages of both forms of action, by permitting the cases to be considered either way, as arising *ex contractu* or *ex delicto*, according as the neglect of duty or breach of mere express promise is meant to be relied upon as the cause of injury." Mr. Chitty supposes the plaintiff has his choice of remedy, (1 Chitty's Pl. 75, 6,) and that in an action founded upon the custom, no advantage can be taken of the non-joinder of defendants, and refers to the cases which were cited upon the argument. He has given precedents of declarations both ways, (2 Chitty, 117 and 271, 2 :) according to which, the declaration in this case is clearly founded upon the negligence of the defendants, and not upon an express promise.

It may be useful to review very briefly some of the leading cases in the English courts on this subject. *Boson* v. *Sand-*

*ford,* (2 Show, 478,) is one of the earliest cases. It first

came before the court of king's bench in 1687. The declaration stated that the plaintiff had laden on board the defendants' ship divers goods, to be carried from London to Topisham for a reasonable freight, and that the defendants received the said goods, "*and them to transport and carry in from aforesaid did undertake,*" but the defendants so negligently carried the same that they were spoiled. At the trial at *nisi prius,* before Lord Herbert, then chief justice, a special verdict was found, the chief justice expressing an opinion that all the owners ought to be joined. When the case was argued at bar, two points were made: 1. Whether the proprietors were answerable? 2. Whether, there being other owners, the action lies against the defendants alone? Sir John Holt, who was now chief justice, expressed an opinion upon the argument that the owners were liable because they have the profit; and he remarked, that if the action be brought upon the *contract,* then all are bound; but if it be founded upon the *tort,* then he, (the plaintiff) may have an action joint or several. He adds, "Here it is not brought upon the express contract, but yet they have all the recompense: so that the reason why they are answerable goes to all, and therefore I doubt it must be brought against all;" but it was adjourned. (1 Show. 29.) The cause was again argued at the next term, (1 Show. 101,) and at the succeeding term the judges delivered their opinions *seriatim.* They all agreed that the action was upon an implied contract, but that contract was entered into by all the proprietors, and that the plaintiff could not recover against a part. Dolbin, justice, thought that the defendants should have pleaded in abatement. Holt, chief justice, says, "This action is grounded upon the trust, and that doth imply a contract. Then in all cases where the action is grounded on a contract, all that are privies to the contract shall take advantage of this omission on the general issue." This case is also reported in 3 Mod. 321, 2 Salk. 440, and in other books, but the report in Shower is the most satisfactory. This case decided three points: 1. That the proprietors as well as the master of the vessel were liable for damages; 2. That the action

UTICA,
August, 1829.

Orange Bank
v.
Brown.

being upon contract, all the proprietors must be joined; and 3. That the non-joinder need not be pleaded in abatement, but was good ground of nonsuit at the trial. This latter point was ruled the other way in *Rice* v. *Shute*, in king's bench, (5 Burr. 2611,) decided in 1770, and in *Abbott* v. *Smith*, in the common pleas four years afterwards, (2 Bl. 947,) and that the non-joinder must be pleaded in abatement; and such has been the common practice ever since.

The case of *Dale* v. *Hall*, (1 Wils. 281,) decided in 1750, is no otherwise important, only as it shews the opinion of the court, that the defendant was liable as a common carrier in an action of assumpsit, and that the liability of a common carrier is based upon contract.

The next case in the order of time is *Mitchel* v. *Tarburt*, (5 T. R. 649, decided in 1794. This was an action against the defendants for the negligence of their servant in running their ship against the plaintiff's ship. To this declaration the defendants pleaded in abatement the non-joinder of other joint owners. Demurrer and joinder. The case of *Boson* v. *Sandford* was cited by the counsel for the defendants; in answer to which Lord Kenyon says, that that case was treated by the whole court as an action for a breach of contract: and that it was there decided, that in an action arising *ex delicto*, the plaintiff may sue all or any of the parties. The case then before the court they considered an action *ex delicto*. The declaration charged that the defendants, by their servant, so negligently navigated their vessel, that by reason of the negligence of their servant, the defendant's ship struck the plaintiff's ship with great force and violence, &c.

The case of *Buddle* v. *Wilson*, (6 T. R. 369, decided in 1795,) came on soon after in the same court, and was an action on the case against the defendant, as a common carrier, and charged that the plaintiff delivered the defendant certain goods to be carried for hire from London to Devises; yet the defendant did not carry them, but neglected to do so; and that by the carelessness of the defendant and his servants, the goods were lost. The defendant pleaded in abatement the non-joinder of two others, to which there was a demurrer. The court held the plea in abatement bad, because not plead-

ed until after a general imparlance; but Lord Kenyon said it might have been supported if pleaded in proper time, and referred to 1 Wils. 282, Denison's opinion, that the declaration upon the custom of the realm was the same with the one then before the court, which was assumpsit.

Next is the case of *Govett* v. *Radnidge*, (3 East, 62, decided in 1802.) The declaration was, that the defendants had the loading of a hogshead of treacle upon a cart for a reasonable reward; but they so carelessly and negligently conducted themselves that they let fall the hogshead and it was damaged. On not guilty pleaded, one defendant was found guilty and the other not. A motion was made in arrest of judgment. Lord Ellenborough gave the opinion of the court. He considered *Boson* v. *Sanford* as clearly an action of assumpsit, and therefore not applicable; and that Lord Kenyon had decided *Buddle* v. *Wilson* upon that case. But this point was not necessary to be decided in *Buddle* v. *Wilson*. Lord Ellenborough, therefore, prefers placing reliance upon *Dickon* v. *Clifton*, (2 Wils. 319, decided in 1766, which was not cited to Lord Kenyon; in which case it was decided that trover might be joined with an action for misfeasance, and also with an action against a common carrier; and the court held that the first count was upon tort. That count was against a person employed by him to transport, in the plaintiff's own vessel, a quantity of malt, but that by his carelessness and negligence, a portion of the malt was lost; and Lord Ellenborough argues, " What inconvenience is there in suffering the party to allege his gravamen, if he please, as consisting in a breach of duty arising out of an employment for hire, and to consider that breach of duty as tortuous negligence, instead of considering the same circumstances as forming a breach of promise implied from the same consideration of hire ?" He considers *Dickon* v. *Clifton* as settling the point in a manner the most conducive to justice and convenience, and as not being overruled by *Buddle* v. *Wilson*. The court decided that the acquittal of one defendant, in an action founded on neglect of duty, and not upon breach of promise, did not prevent the plaintiff's having judgment

UTICA,
August, 1829.

Orange Bank
v.
Brown.

against the defendant against whom the verdict was obtain-ed.

Next in order of time is the case of *Powell* v. *Layton*, (5 Bos. & Pul. 365, decided in 1806.) The declaration charges that the plaintiff, at the special instance and request of the defendant, had caused to be delivered to the defendant divers goods to be conveyed by him, &c. and them delivered in like good order, dangers of the seas, &c. excepted, for a certain freight; and although the defendant received the said goods, he did not carry and deliver them, but wholly failed and neg-lected so to do, &c. The defendant pleaded in abatement that there were two others jointly interested, one of whom was still alive. To this plea the plaintiff demurred. Sir James Mansfield, chief justice, delivered the opinion of the court. He assumed what is not disputed, that if the action is founded in contract, the plea in abatement is good. He then proceeds, and endeavors to prove that the declaration is founded on contract. He refers to Cowp. 375, and to the assertion of Lord Mansfield, that if a common carrier accept goods to carry, and then die, an action will lie against his ex-ecutor. He asks, " How is that? Why, because the action is founded on contract. Indeed, Lord Mansfield says it must not be an action on the custom of the realm, which would be in tort, but it must be an action of contract." Lord Mans-field was discussing the question whether trover would lie against an executor for a conversion by his testator. He had, taken a distinction which is an important one, between the *cause of action* and the *form of action;* and he argued that the cause of action might survive, though not in the same form as against the testator. He says: " But in the most if not all the cases where trover lies against the testator, another action might be brought against the executor, which would answer the purpose. An action on the custom of the realm against a common carrier is for a *tort* and supposed crime; the plea is not guilty; therefore it will not lie against an ex-ecutor. But *assumpsit,* which is another action for the same cause, will lie." What is here said by Lord Mansfield, seems to me to shew conclusively that there are two remedies against a common carrier, either of which may be pursued,

one in tort, the other in assumpsit; and no intimation is given that the two actions are to be blended or run into each other in any particular.

The next case is *Max* v. *Roberts*, (12 East, 89, *decided in* 1810.) It is a writ of error in the king's bench from the common pleas. It was a special action on the case against the defendants, owners of a ship in which the plaintiff had sent goods from Liverpool to Waterford. The vessel made a deviation in her voyage, by reason of which the goods were lost, and by means of which the plaintiff failed in an action against the insurer, and therefore claimed damages. This case was decided in the common pleas upon the same principle as that of *Powell* v. *Layton*. It was argued in the king's bench, and afterwards in the exchequer chamber, before the twelve judges, but decided at last on the insufficiency of the declaration. The precise question here was, whether, in such an action, a verdict could be given acquitting some of the defendants and finding others guilty.

The case of *Butherton* v. *Wood*, (5 *Brod. & Bing*. 54, *decided in* 1821,) was a writ of error in the exchequer chamber. Wood, the plaintiff below, sued ten defendants, as proprietors of a stage coach, for injuries he had received by being upset by careless driving, while he (the plaintiff) was a passenger. At the trial, the jury found two of the defendants not guilty, and a verdict against the others, on which the king's bench rendered judgment; and for this cause error was brought into the exchequer chamber. On the argument, all the preceding cases, and some others, were cited. Dallas, chief justice of the common pleas, delivered the judgment of the court. He said it had been contended that the declaration was upon contract, and he admitted, if it were so, all the joint contractors must be made defendants; but the court thought that rule applicable to cases where it was necessary to shew a contract on trial. "This action is on the case against a common carrier, upon whom a duty is imposed by the custom of the realm, or, in other words, by the common law." "A breach of this duty is a breach of the law; and for this breach, an action lies founded on the common law, which action wants not the aid of a contract to support it." The action of as-

sumpsit, he admits, would lie; but it was of recent use to an action on the case, which was as old as the law itself. He considered this action as founded on a breach of duty depending on the common law, on a tort or misfeasance; and was therefore several as well as joint. He considered the cases of *Powell* v. *Layton* and *Max* v. *Roberts* as founded upon a particular contract, and therefore not in the way. He concludes by saying, " At present it is sufficient to say that this action is founded on a misfeasance, and that the declaration is framed accordingly; and therefore that the verdict and judgment given against some of the defendants is not erroneous, and ought to be affirmed." ·

These are all the cases necessary to be noticed; and I hope this short review of them may elucidate the subject.

It is not to be denied that there has been a difference of opinion between some of the English judges on the question whether an action against a common carrier is an action founded on a tort or on a contract. Dallas, chief justice, seems to put' that question at rest, by bringing it to a very fair test: does it require the plaintiff to shew a contract, express or implied, to support it? The action on the case was at last decided to be for a tort or misfeasance. This was clearly the opinion of Lord Mansfield in the case cited by Ch. Justice Mansfield; and all the cases in which it has been held necessary to join all the joint owners, have been said by distinguished judges to be clearly actions upon a promise. Much of the confusion has probably grown out of the forms of declaring in some of the cases, where it is difficult to determine whether the promise and undertaking often stated in the count, or the custom of the realm, also stated, is intended by the pleader to be the foundation of the action.

I apprehend the true rule now is, that an action solely upon the custom is an action of tort; that in such action all or any number of the owners of a vessel, coach, or any kind of conveyance used by common carriers, may be sued, and judgment may be rendered on a verdict against all or a part only of those against whom the action is brought; the plaintiff has his choice of remedies; either to bring assumpsit or case; and that when one or the other action is adopted,

it must be governed by its own rules. But if the plaintiff states the custom, and also relies on an undertaking general or special, as in *Boson* v. *Sandford* and some other, then the action may be said to be *ex delicto quasi ex contractu*, but in reality is founded on the contract, and to be treated as such.

In *Allen* v. *Sewall*, (2 Wendell, 338,) in giving the opinion of the court, I remarked that all the copartners should have been sued, as the action was *quasi ex contractu*. It was unnecessary in that case to say any thing on that point, as no plea in abatement had been pleaded; and upon further examination, I am satisfied the remark is incorrect, for the reasons above assigned.

It is certainly now settled in England, that an action against a common carrier upon the custom, is founded on a breach of duty; that it is a tort or misfeasance; and it follows that it is joint or several.

In the case now under consideration, all the counts are substantially upon the custom and in case, though some of them contain expressions similar to those used in actions of assumpsit but there is none of them which relies upon any undertaking of the defendants, and they all state the gravamen to be a breach of duty.

I am therefore of opinion, that an action on the case against a common carrier belongs to the class of actions arising upon a tort or misfeasance *ex delicto ;* and that such actions being as well several as joint, it is unnecessary to join all the joint tort feasors. The demurrer is well taken, and the plaintiff is entitled to judgment of *respondeas ouster.*

Justices SUTHERLAND and MARCY did not hear the argument of this case, and gave no opinion.