*537 The following opinion was delivered :
By Mr. Justice Cowen.
The defendants having undertaken to carry from the Springs to Albany, cannot now be received to say they were in truth carriers no farther than Schenectady, the termination of their own road. As to the parlies for whom they may thus undertake, they are estopped to deny that they are carriers for a distance commensurate with what they engage for. In order to limit their liability to a part of the route, they should at least have given Barnes notice that after the car struck the track beyond Schenectady, he must look to another company, if that were the fact. But it was not even in proof that this was so. Non constat that the Mohawk and Hudson Company had agreed to be accountable for the losses from cars which the defendants might run on their road. On the contrary the agent of the defendants himself proceeded through ; and he does not say that he was employed as agent for any part of the distance, by the other company. At any rate, the defendants induced the plaintiff’s agent to give them credit as carriers for the entire distance; and should be bound on the principle laid down by Mr. Justice Nelson in Welland Canal Co. v. Hathaway, 8 Wend. 483. The questions whether Barnes was guilty of .fraud in not giving notice of the money, and whether, on the contrary, it was any more than sufficient for travelling expenses, and so not a part of the baggage, was left to the jury ; and it cannot be denied that they were put in a shape as favorable for the defendants as the law would require, and perhaps more so. The finding of the jury settles these questions in favor of the plaintiffs as well as the question of loss. Orange Co. Bank v. Brown, 9 Wend. 85, 115. Story on Bailm. 362, § 567. Id. 360, § 565. But the variance mentioned on the motion for a non-suit, between the contract as set forth in the declaration and the proof, appears to be material according to the authorities. The contract, as set forth, was to carry the trunk and money of the plaintiffs. The proof is that the trunk belonged to Martin, a stranger; nor was it shown that the plaintiffs had any connection with it. If the trunk were Barnes’, *538 the variance would be the same; and so I should think if jie bac¡ hired or borrowed it of Martin for his own use. It was said by the plaintiffs’ counsel, that the declaration here might be considered as in case for a tort; and if that were so, the strictness required in proving the articles alleged to have been delivered for carriage would not be so great. Blit clearly the declaration is in assumpsit upon the contract. Here is the consideration, and the promise made to the plaintiffs to carry two things, at least; the trunk and the money, according to the form, 2 Chit. Pl. 355, ed. 1823. A declaration in case for the like injury is given, id. 651. The proof is, at most, of a contract with the plaintiffs to carry the money only. The declaration then fails in describing correctly a special executory contract, wherein great exactness is always demanded. Where the declaration is on a promise to do several things, and only one is proved, this is a variance. In Simmes v. Westcott, 1 Leon. 299, the promise declared on was to pay £ 20 to procure all the corn growing on certain lands, and to provide a wedding dinner. The jury found the promise of £20, but nothing else ; and judgment was given against the plaintiff. A similar decision was made in Este v. Farmer, March, 100. In the first cáse, Clench J. said “ If promise be made to deliver a horse and a cow, and the horse be delivered but not the cow, the party shall have an action for the cow ; but he shall declare upon the whole matter.” The case in March was to pay so much money and carry away wood. On a plea of payment of the money, and non assumpsit as to the other, the jury found simply that the defendant did not pay the money, saying nothing as to the other. The court agreed that the contract was entire and could not be apportioned. A re-pleader was awarded. In Powell v. Waterhouse, Aleyn, 5, the declaration was that the defendant promised, among other things, to pay so much, and even after verdict for the plaintiff, the declaration was held bad, and the judgment arrested. These are old cases to be sure, but they are relied upon by an excellent modern pleader Mr. Lawes, as settling the form of declaring on a special assumpsit. Indeed, it was hardly denied, on the argument, that taking this deck- *539 ration to be in assumpsit, as we clearly must, it could not be sustained by the proof. There was a case before Lord Hardwicke at the London sittings, in 1736, much in point with the present. The declaration was in assumpsit on an undertaking to repair, alter and enlarge a house, particularly the club-room, in it; whereas the room was badly repaired. And the proof was that the plaintiff’s house being insured, and having been damaged by fire, the insurance office on the plaintiff’s application, employed the defendant to repair it; and the plaintiff agreed with him to make alterations in the club-room only. This was held a fatal variance, Witherington v. Buckland, Cas. in K. B. Temp. Hardwicke, 295. The whole contract, in the case at bar, was made ostensibly with Barnes. If, in legal construction, it can be turned in favor of the plaintiffs, it must be in respect to their ownership of the articles undertaken to be conveyed; and there can be no pretence that the trunk of a stranger, Martin, or the trunk of Barnes, in which the plaintiffs had leave to deposit their money, would be comprehended within the principle. In Witherington v. Buckland, Lord Hardwicke said, “You have declared upon a special contract, and therefore you ought to prove the contract as laid; now the contract you have proved was made with the assurance company, for the repair of the house, and if any contract was made by the plaintiff with the defendant, it was but for one room’s alteration,” And in this case the distinction is taken between variance from a declaration in case as for the tort and assumpsit on the contract. “ You have not,” said Lord Hardwicke, “ declared on any general custom of the realm that workmen are bound to do what they undertake in a workmanlike manner, nor as the declarations are against a smith for pricking a horse in shoeing him, but you have declared upon a special contract; and therefore you ought to prove the contract as laid.” That is a distinction which was very much considered by Parker, Ch. J. in Jones v. Givin, Gilb. Cas. in Law and Equity, 185, at pp. 228 & 9. The chief justice supposes a declaration in malicious prosecution, to allege, among other things, that the defendant was acquitted, whereas, though all the malice and danger *540 be shown, it turns out that he was not acquitted. He then adds, “ There is a diversity between actions on contracts and on torts. In actions on contracts the plaintiff must prove h as he has laid it; but upon a tort, which is often aggravated with many particulars, it is not necessary to prove his whole case; but though he fails in many of the particulars, yet if he proves so much of it as leaves him good cause of action, he shall recover.” A declaration in case against a carrier has been likened to one in an action of trover in respect to the certainty required. Chamberlain v. Cooke, 2 Ventr. 78. The declaration is in the case cited according to the form in 2 Chitty, 651, simply that the plaintiff was possessed of the goods, that he delivered them to the defendant to carry, &c., and that the defendant lost them through negligence, omitting the allegation of any promise. The declaration in trover, as is well known, varies from that but in the manner in which the defendant came into possession of the goods, and there you allege the finding and the loss of as many articles as you please ; and though your proof touch but a part, you recover pro tanto. The analogy therefore probably holds good throughout; so that where the case is at all doubtful or embarrassed even as to subject matter, the action should, if the plaintiff would secure himself from injury by variance, be for the tort- It is not necessary to say any thing of the additional advantage from avoiding the effect of non-joinder, which was much considered by Savage, Ch. J. in the late case of the Orange Bank v. Brown, 3 Wend. 158. That case, however, shows the form of the declaration when for the tort, and is also very valuable as settling the plaintiff’s right of election to proceed in form ex contractu or ex delicto, in some cases where it seemed to have been left doubtful by the former authorities.
On another point raised, looking still to the distinction between assumpsit and case, there is certainly some farther difficulty, as this cause stood when it finally went to the jury. I have shown that if this action would lie in the name of the plaintiffs for the trunk, it must be in respect to their interest in it, which was nothing. So of the money, they must show such an interest in that as would turn the pro *541 mise made to Barnes, into one directly to them. To work such an effect, they should be absolute owners; and Barnes a mere naked servant or agent. The contract is an implied one, and always runs to the owner : in this case for instance, to Martin or Barnes, in respect to the trunk, and to the plaintiffs as owners of the money, if they were so. Dawes v. Peck, 8 T. R. 330. Savage, Ch. J. in Orange Bank v. Brown, 3 Wendell, 161. And I take them to have been owners of the money as this case stood on the motion for a nonsuit, which was rightly denied. Barnes had been out and collected the money as servant or agent, and held it as such. But on being called again, after the motion had been denied, he stated that he had separated the money in question from the general mass of collections and remitted the balance to the plaintiffs. This must be taken to have been lawfully done, and was the same as if the plaintiffs had delivered him the money ; and if so, the question might have been raised whether he was not more than a mere agent; whether he was not a bailee having himself an interest in the money delivered for such purpose. Still the plaintiffs might perhaps have had an action on the case in respect to their interest in the reversion. But it is doubtful, at least, whether a promise to carry for a bailee can enure to the benefit of the bailor. This would have raised the third point made by the defendants í but we cannot decide upon such a state of things ; for the point was not mentioned after Barnes had been recalled, and given the case such a complexion. Had the question been then raised, it might have been explained away, if there be any thing in it, or the case before us might have been differently framed.
On the whole, the case comes down to a trivial variance in point of form. The judge directed the jury to find for the plaintiff merely the money in the trunk with interest; and it was not denied on the argument that the verdict was confined to that. No justice has been done, and so far as vve can see, none could have been done, by the mere formal addition of the trunk in the declaration, and in effect thus striking it out on the trial. In such a case there is no doubt of our power to allow an amendment; and I think it is our *542 duty to do so, under the circumstances, upon easy terms. Hull v. Turner, 1 Wendell, 72, is in point as to our power. There the plaintiffs declared on a warranty that a set of bellows should blow three fires; the proof was of a warranty to blow three fires for one year. At the trial, I directed a verdict for the plaintiffs with leave to move an amendment. He did move; but for some reason, (what I never learned,) this court imposed onerous terms, a new trial and payment of all the costs of the circuit and motion. Looking through the multitude of the cases in which this court have allowed amendments of such formal slips, from variances in pleading written documents, now sanctioned by statute, 2 ft. S. 328, § 99, 2d. ed. to those in cases even of torts—sometimes on more and sometimes less severe conditions—I think parties ought to be told that when a motion for a new trial rests solely on such a ground, we will no longer listen to an excuse that the party did not come prepared for a trial on the merits because he relied on a variance. This is the only possible injury he can suffer. I admit that where he has sworn to such reliance, and the loss of a defence by reason of it, the amendment has generally been made-on condition that the plaintiffs should consent to a new trial. Since Hull v. Turner, this court in Carpenter v. Payne, 10 Wendell, 604, allowed such an amendment simply on vacating the verdict without costs. And in Oathout v. Ledings, 15 Wendell, 410, the variance was amended on a motion for a new trial, without any terms being imposed. An amendment was also allowed, on a like motion for a new trial, in the previous case of Borst v. Griffin, 9 Wendell, 311, and the court refused to recognize any excuse for want of preparation, because the party relied on the variance. It is true that was a case within the statute, and Nelson, J. said if such an excuse were allowed, the statute would become nugatory. But this court had gone far beyond the cases provided for by statute, before that was passed ; and we may say in the language of Nelson, J. there, if such an excuse be allowed, the law and practice as established by our decisions would become nugatory. Why the legislature should have stopped with clerical va *543 riances from documental proof, and descriptions of property &c. the least excusable of any, and not have gone with the decisions' of this court and the English act of parliament, to oral matters, many times the most difficult of all to describe in pleading, I never could see. But it is enough that the subject stood and still stands on an equitable footing without the statute.
In general, I should feel inclined to impose some terms, by way of penalty for a departure from correct pleading; and perhaps sometimes put the party to a special motion, that we might hear affidavits from the other side. But in this case, there could not possibly be any mischief to explain. An article of trivial value in declaring upon a mixed oral contract, slips into the declaration. The only injury it could do was to charge the defendants with the value; but that is obviated by dropping it on the trial. Under such peculiar circumstances, I think the plaintiffs should have leave to amend by striking the trunk from the declaration.
It was farther objected that the declaration was for a trunk and goods as well as bank bills. The second count was for a trunk and contents simply. The only contents in proof were the money, and there was no proof as to goods on the trial. There was no variance as to the property except in adding the trunk. But the plaintiffs may so amend as to conform their declaration throughout, to a simple claim for the bills.
There is nothing in the objection, that the stipulation to convey Barnes himself was parcel of the contract with the plaintiffs. Clearly that was personal to Barnes. Had he been injured by the defendants’ carelessness, he might himself have had his remedy in his own name, on a promise to carry him safely. The contract to carry a passenger is different and distinct from that to carry goods, and may, I think, be set forth as a separate contract. The obligation, though very severe, is yet less so in some respects than that for the carriage of goods. In the latter case, the carrier is an insurer against every thing but inevitable accident. In the'former, he is not responsible for accidents where all reasonable skill and diligence has been employed. Story on *544 Bailm. 379, § 602. To be sure, there may be a contract a master to carry his servant; but in ordinary construction, where a man’s agent is out on business, and nothing is said to the contrary, the contracts made by the agent for his transportation stand in his own name and right. The principal has no property in his agent, or the master in his servant, (like the owner of a slave) on which the law would, necessarily imply a promise to such principal or master for the personal safety, &c. of the agent or servant. Such implication is confined to the case of a vested legal interest, a property or ownership in a thing; and has never been carried any farther. The necessity for such a distinction, however, shows still farther that there are so many more niceties about this action of assumpsit, than that of case, as to render the latter decidedly preferable.
In my opinion, a new trial should be denied on the plaintiff so amending his declaration that it shall be in assumpsit on a contract to carry the bank bills in question on the trial, and them only.
’ My brethren think that the third ground of the motion for a nonsuit was well taker). They are of opinion that this being an action of assumpsit, and the agreement having been made apparently with Barnes as the party promisee, the law will not imply a promise to the plaintiffs that the money should be carried safely, although it belonged to them ; that there being in fact but one consideration paid, and but one contract, and that with Barnes, several promises cannot be thus raised to enure several ways, one to the plaintiffs for the carriage of the money, and another to Barnes for the carriage of his trunk and his person. On reflection, I concur that there is a difficulty in this form of action, at least, in giving such an effect to the contract. This view is fatal to the action. There must be a new trial; the costs to abide the event.
New trial granted.