## Ryerss and others *v.* Wheeler.

Where a testator gives all his *back lands* to certain devisees, *parol evidence* is admissible to designate the premises, as, by showing that certain lands owned by him, were called and known by that designation by him, his family and neighbors.

Declarations of the testator *at the time of the making of the will,* explaining the meaning of the terms, or defining the property intended to be devised cannot be received in evidence ; but if made *before or after* the execution of the will, proof of such declarations is admissible.

The rule that to be valid, a will or other writing must be *certain in itself,* applies only to such particulars, as do not in their own nature refer to any thing *dehors* the instrument in question.

Where a plaintiff in ejectment claims in the declaration the *whole* of certain premises, and shows title to only a *moiety,* and a nonsuit is granted, and on application a new trial is granted, an amendment of the declaration will be permitted, the costs to abide the event.

This was an action of ejectment, tried at the Yates circuit, in December, 1838, before the Hon. Daniel Moseley, one of the circuit judges.

The plaintiffs claimed to recover 109 acres of land situate in the town of Milo, in the *county of Yates,* under a devise in the last will and testament of *Gozen Ryerss,* of *Richmond,* in this state, bearing date 21st October, 1800, in these words : "Item. I give and bequeath all my *back lands,* to my grand-children now living, and to those that may .(be) born hereafter, share and share alike in severalty, each to receive his or her share, as they respectively become of age, and to their heirs and assigns forever." By previous devises in the same will, he had given sundry parcels of real estate situate in the *county of Richmond* to a son, daughter, and grand-child. The plaintiffs proved that the testator, Gozen Ryerss, was the owner of a tract of 2400 or 2600 acres of land in the vicinity of the court house in Yates county, that these lands were called by the testator his *back lands,* and were also so called and known by his family and neighbors on Staten Island. The witness who proved this fact, testified that his father-in-law, not the testator, who also resided on Staten Island, and himself, whilst he

resided there, owned lands in the western part of this state, and that they also called their lands *back lands*. The whole of this evidence in relation to the name by which these lands were known, and particularly as to the *declarations* of the testator designating the lands as *back lands*, was objected to by the defendant's counsel, but the objection was overruled. The plaintiffs were nine in number, and the declaration contained nine counts. The *sixth* count was in the names of *Gozen Adrian Ryerss* and *Thomas Baxter*, claiming the. whole of the premises in fee. There was evidence adduced to show title in all the plaintiffs named in the declaration as derived from the grand-children of the testator, but the plaintiffs' counsel finally abandoned all the counts except the sixth, and having succeeded in showing title in the plaintiffs named in that count, to a *moiety* of the premises claimed, rested. The defendant's counsel thereupon moved for a nonsuit on the grounds : 1. That the plaintiffs had failed to show any title to the premises in question, by reason of the uncertainty of the terms *back lands*, and 2. That the plaintiffs named in the sixth count, had shown title to only a *moiety*, whereas, in the count, they claimed the *whole* of the premises. The circuit judge granted a nonsuit, without stating the grounds upon which the order for the nonsuit was made. The plaintiffs ask for a new trial.

*H. Welles*, for the plaintiffs.

*B. Davis Noxon*, for the defendant.

*By the Court*, Cowen, J. I can hardly think the judge, in granting the motion for a nonsuit, laid any considerable stress upon the supposed variance between the proof and the sixth count. Whether the plaintiffs had made title in severalty, or in common, the judge had a right to disregard the variance in his discretion, and probably would have done so, though I admit this lay in his discretion. *Holmes* v. *Seely*, 17 *Wendell*, 75, 79, 80. *Weed* v. *The Saratoga and Schenectady R. R. Co.*, 19 *Wendell*, 541, 2. Under the peculiar circumstances of this case, the plaintiffs may,

If they shall be so advised, amend by adding counts, or modifying those already in the declaration, in such a manner as to avoid any variance from the proof at the trial.

We are entirely satisfied that a new trial should be granted, on the first ground taken for a nonsuit. The term *back lands* was, it is true, insufficient, of itself, to designate any particular class of lands owned by the testator. It was uncertain; and might refer to different objects, or to none upon which any distinctive character could be fastened by extrinsic proof. But *id certum est, quod certum reddi potest.* You must, in the most accurate description, go out of the instrument in order to apply it to the subject matter of the devise or grant; *Wigram on Extr. Ev.* 38, 41. *Phil. Ev. 8th Lond. ed.* 731. 1 *id. 7th ed. with notes by Cowen & Hill,* note 957, *p.* 1399. *Sutherland, J. in Jackson, ex dem. Lowell v. Parkhurst,* 4 *Wendell,* 374; and as far as we are able to collect from the evidence, that was effectually done in this case; at least a jury might have so understood the testimony of Mersereau. The premises in question and other lands in the same vicinity were known and called by the testator, during his lifetime, and by his family and neighborhood, *back lands.* This is like a man's making a map of his lands on which he designates certain parcels by certain names; and then devises or conveys them accordingly. A nick name, or a name by reputation given by the testator, and current in his family and neighborhood, is sufficient to designate the devisee. *Wigram on Extr. Ev.* 38, 9, *and the cases there cited ;* and why not the subject matter devised ?

The rule that to be valid, a will or other writing must be certain in itself, has no application except to such particulars as do not in their own nature, refer to any thing *dehors* the instrument in question. A devise to A. and B. and *his heirs,* might be irremediably uncertain in respect to what heirs are intended. But the parcels in a devise always lie out of it, and must be sought by evidence *aliunde.* The search may indeed be unavailing, but still there is the right of search, and questions are thus every day raised for the jury.

The form of one of the objections at the trial seems to suppose, that the testimony came within those cases which refuse the testator's declarations intended by him directly to explain the words of his will ; and I agree that such declarations, especially if they were made at the time of framing the will, are not admissible.    Sir John Leach, in *Goblet* **v.** *Beechy*, *Wigr.   Extr. Ev.* 151, *App.*, rejecting the evidence of *Mary Holt*, which related to what *Nollekens* said at the time of her witnessing his will.    Lord Thurlow said very properly in *Fonnereau* v. *Poyntz*, 1 *Br.   C.   C.* 477, " I lay out of the case all *declarations* of the testatrix of what *she really meant to give*, at the *time of making her will* ; and *all state of her property* from whence it might be inferred *what she meant.*"    But he immediately added, " you must *here evidence concerning the subject to which the will applies,* in order to see whether the *description* applies *aptly or not.*"    All the cases agree that this latter rule lets in what the testator has done to his property, in altering its nature or its form.    His acts have thus left it within, or taken it out of the description, and there are several cases that his declarations are admissible for the like purpose of applying the description.    *Sanford* v. *Raikes*, 1 *Meriv.* 646, will serve in a good measure, to illustrate both propositions.    The testator had ordered timber to be cut down on his *Youlston estate*, to the value of £10,000 ; afterwards he devised a house, which he had before agreed for the purchase of, to one Sanford ; and added in his will, " which [house] is to be paid for out of timber which I have ordered to be cut down."    Sanford filed his bill to compel the application of the *Youlston estate timber* to the purpose of paying for his house.    It was denied by the defendants that the will could be explained by evidence of what the testator had directed as to cutting down the timber.    To which the master of the rolls (Sir William Grant,) answered : " I had always understood, that where the subject of a devise was described by reference to some extrinsic fact, it was not merely competent, but necessary, to admit extrinsic evidence to ascertain the fact, and through that medium, to ascertain the subject of the devise.    Here the question is

not upon the devise, but upon the subject of it. Nothing is offered in explanation of the will, or in addition to it. The evidence is only to ascertain what is included in the description of the thing devised. When there is a devise of the estate purchased of A., or of the farm in the occupation of B., nobody can tell what is given, till it is shown by extrinsic evidence what estate it was that was purchased of A., or what farm was in the occupation of B. What is there, in the fact here referred to, viz: an antecedent order for cutting down timber, that makes it less a subject of extrinsic evidence than such an one as I have alluded to? The moment it is shown that it was a given number of trees growing in such a place, or £10,000 worth in value of the timber on such an estate that the testator had ordered to be cut down, the subject of the devise is rendered as certain as if the number, value or situation of the trees had been specified in the will."

Then in respect to the name of an estate fixed by the declarations of the testator. In *Doe, ex. dem. Beach,* v. *The Earl of Jersey,* 1 *Barn. & Ald.* 550, *in K. B.,* 3 *Barn. & Cress.* 870, *S. C. in House of Lords,* the testator devised thus: " all my *Briton Ferry estate,* and all my *P. C. estate,* which, as well as my *Briton Ferry estate,* lies in the county of *Glamorgan.*" The court held that the devisee was not confined to the *Briton Ferry estate,* lying within the county of Glamorgan, but might recover certain premises lying in Brecon, out of the parish of Briton Ferry, and out of Glamorgan, because the premises had been known and reputed as a part of the *Briton Ferry estate.* Abbott Ch. J. said, the words " all that, my *Briton Ferry estate,* &c. denote a property *known to the testratrix* by the name of her *Briton Ferry estate."* Among other things, the entries of the stewards of the testatrix and her predecessors, in which they called the premises in question " *Briton Ferry estate,* in the county of Brecon," was held to have been properly received at the trial. In short, the case was in principle precisely the one before us. Evidence was received both of the testatrix's own declarations, and those made by her agent, the steward, and the reputed name under which the parcel was

comprehended.   Abbott, Ch. J. added, that the question was one of *parcel, or no parcel,* and the purpose of the evidence was so obvious that the judge did right in receiving it, without the counsel being put to specify the object with a view to which it was offered.   The case of *Hatch* v. *Hatch,* 2 *Hayw.* 32, is also in point.

It is very common that neither the judge nor jury can understand the meaning of a word used to denote the subject of bequest or devise.   The testator may express himself in a foreign language, or use terms with which, as a member of a particular trade or calling, he is familiar, *Wigr. on Extr. Ev.* 34, 5, or in language which has a provincial or local meaning.   *Gresl. Eq. Ev.* 199.   In either case, persons acquainted with the meaning of the words must be received as witnesses to translate or define them. *Id. id.*   Nollekens, the sculptor, bequeathed "all the marble in the yard, the tools in the shop, bankers, *mod.* &c. and sculptors were received to show that *mod.* meant *models,* and then what the latter word was understood to import among sculptors.   *Goblet* v. *Beechy,* 3 *Sim.* 24.   *Wigr. on Extr. Ev.* 139, *App. S. C.*

I mentioned a devise to another by a nick name.   In *Andrews* v. *Thomas,* 1 *Cox,* 225, Sir Lloyd Kenyon admitted, you may prove that the testator usually called the devisee by that name.   Again, in *Herbert* v. *Reid,* 16 *Ves.* 481, the testator bequeathed £500 to Jane Herbert, *if in his service* at the time of his decease.   She lived with and served the testator some time, but left his house shortly before his death, and his declarations soon after she left were received, to show that he still considered the legacy as her due, and that she was to return, if he got well.   And it was inferred on the whole of what he said, that he did not consider her as having quit his service, though she had actually left the house.   She therefore obtained a decree for the legacy.

So much for the declarations of the testator.   They are clearly receivable as giving a name or character either to the devisee or the property devised ; and that too, as appears

by the cases, whether such declarations be made before or after the will was executed.

In the case at bar, the name of the premises in question as given by the testator when he talked of them was *back lands*. Sometimes he gave them another name, but I understand the evidence to be that he most usually called them *back lands;* and there can be no doubt that proof to show the prevalent name in his family and neighborhood, which was also *back lands,* is admissible. None of the evidence given, tended to add to or detract from the language of the will, but merely to explain and give meaning to that language. It was different in the case of *Doe, ex Dem. Chichester,* v. *Oxenden,* 3 *Taunt.* 147, a case mainly relied on by the defendant's counsel. The devise there was, " I give my *estate of Ashton.*" The testator had an estate which he used to call his *Ashton estate,* only a part of which was locally situate at Ashton. His declarations giving a name to the estate, and the acts of his stewart, were denied as evidence that he intended to devise his whole Ashton estate. But this was on the ground that the words meant an estate locally situate at Ashton ; *Per Holroyd, J. in the course of the argument of Doe, ex dem. Beach,* v. *Earl of Jersey, in* 1 *Barn. & Ald.* 554 ; *Gibbs, Ch. J. in Doe, ex dem. Oxenden,* v. *Chichester,* 4 *Dow,* 92, *et seq. in the House of Lords ;* and to receive the testator's declarations, going to show the contrary, would therefore be to contradict the language of the will. *See Wigr. on Extr. Ev.* 15, *Prop. II.,* and his commentary on *Doe* v. *Oxenden,* at *p.* 19 and 60. The learned writer thinks that the principle of adhering to local description was carried in this case to its utmost extent. But the decision was affirmed in the House of Lords, 4 *Dow's P. C.*

New trial granted. The costs to abide the event; with leave to amend *Narr.* on same terms.*

---

* See the case of *Fish* v. *Hubbard's adm'rs.* 21 *Wendell,* 651.