## No. 9003.

### R. M. FLAUTT vs. M. LASHLEY ET ALS.

A boat used by its owners and managers for their own purposes and those of others who *agree* to pay certain rates for the transportation of their goods from one point to another and which is not shown to have been held out as a common carrier, cannot be declared to be such, at the instance of any of such *agreeing* parties.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*Jonas & Nixon* for Plaintiff and Appellee.

*W. S. Benedict* for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J.    This is an action in damages against the owners and managers of a steamboat, alleged to be a common carrier, for injury inflicted from August 24th to October 12th, 1882.

The complaint is that the defendants have discriminated against plaintiff in their business, of transporting cattle across the river, from the Morgan railroad depot on the west bank of the river to the slaughterhouse on the east bank, and that the discrimination consisted in charging him unreasonably high rates of freight and refusing to carry his goods, unless such rates were paid.

The damages said to have been sustained, were assessed at $35,000.

The defense is, substantially, a general denial.

The case was tried by a jury who returned a verdict for $3500.

From the judgment on such verdict, the defendants have appealed.

The first and main question to be solved, is: whether the boat in question was a common carrier.

Bearing in mind the definition given to the word by text writers and by courts of justice, such as we find it stated and announced in Hutchinson on Carriers, p. 30 sec.—; in 1 Peck 50; 1 Salk 249; 3 Wend. 161; in Parson's on Cont., 5th Ed. 166, note; in Stay. on Cont. § 752 (a), we are satisfied that the "*Barremore*" which was the boat used for ferrying accross and on the river, from one point to another, was not such carrier, at least as to plaintiff.

It appears from the evidence that two of the defendants had been running opposition boats, to their great mutual pecuniary injury, losing a large amount of money by so doing; that they finally came to their senses and agreed to unite in the undertaking. The plaintiff endeavored to enter into it, was allowed to do so on his *agreeing* that he would

have all his stock transported by the boat.  He, subsequently, however, broke that contract by sending his cattle, etc., to the slaughterhouse, through the streets of the city, when the same arrived on that side of the river.

By making this contract, the plaintiff admitted that the boat was not a common carrier.  37 N. Y. 342.

There is nothing to show that the boat was ever held out as a common carrier and that it was advertised as such.

In order to establish that the undertaking was to carry for a compensation, the goods of *all* persons indifferently, who choose to employ the boat, it was sought to be shown that, in a few insignificant cases, different rates were charged and collected which did not amount in all to $2.  The explanation given, that possibly the rate was reduced in those cases, because of the penury of the shippers appears plausible and satisfactory.  For having thus acted, the defendants should not be held to have been common carriers.

This view of the case renders it unnecessary for us to announce specifically the result of our examination of the volumnious transcript in the case, which, if it was expressed, would not, even if the boat were a common carrier, favor a recovery by plaintiff.

It is, therefore, ordered and decreed that the verdict be quashed and the judgment thereon be annulled and reversed; and, it is now ordered and adjudged that there be judgment in favor of defendants, rejecting plaintiff's demand with costs in both courts.

Rehearing refused.