Cary *v.* Cleveland and Toledo Rail Road Company.

---

CARY *vs.* THE CLEVELAND AND TOLEDO RAIL ROAD COMPANY.

Common carriers of passengers and their baggage are liable for the latter until its safe delivery to the owner. They are bound not only to safely carry the same to its place of destination, but there to deliver it, in a reasonable time and in a reasonable manner.

And if baggage, belonging to a passenger, after reaching its place of destination, and while still in the possession of the carrier, is destroyed, by fire, without any fault of the owner, the carrier is liable for its value.

The defendant was a corporation, created by the laws of Ohio, for the transportation of freight and passengers between Toledo and Cleveland. Between the latter place and Buffalo two other rail road companies were in operation. At Buffalo and Toledo tickets were sold and baggage was checked over the whole route. B. purchased of the defendant's agent at Toledo passage tickets for Buffalo, over the three roads, and delivered her baggage to the defendant's baggage agent, who gave her a check entitling her to receive such baggage at Buffalo. In consequence of a detention by storms, the cars did not arrive at Buffalo until late at night, and other trains arriving at the same time, there was an unusual crowd of passengers, and an accumulation of baggage, at the station, and a long time was occupied in delivering the baggage. B., who was a female, traveling alone, did not claim her baggage that night, and on calling for it, the next morning, it could not be found, and was supposed to have been destroyed by a fire which consumed the car-house and a large quantity of baggage, during the night.

*Held,* that under the circumstances B. was not required to demand her baggage on the night of its arrival at Buffalo; that the defendant's responsibility, as a carrier, for its safe keeping continued, and that the defendant was liable for its value. BACON, J. dissented.

Cary *v.* Cleveland and Toledo Rail Road Company.

*Held, also,* that the defendant had the power to make the contract for the transportation of B. and her baggage, from Toledo to Buffalo; and that the validity of the contract was not affected by the fact that it was to be, in part, performed beyond the territorial limits of the state of Ohio.

The question as to the binding force of the contract, under such circumstances, does not depend upon the state line, but upon corporate power. So long as the existence of the corporation, and power to contract within the limits fixed by its charter are conceded, the same force and effect must be given to its contracts as if it had been created by the laws of this state.

Contracts should be palpably *ultra vires* before they are held to be void for that reason, at the instance of the corporation, as against innocent third persons dealing with it.

Corporations should be restricted, so far as courts can, in the use of their powers, limit them, to the exercise of their legitimate functions; but the plea that a contract which they have deliberately made, and of which they have received the full benefit, is void for want of power in them to make it, is not a gracious one. Per W. F. ALLEN, J.

Where corporations owning separate lines of rail road connecting with each other and forming a continuous route, enter into an arrangement between themselves, by which, at either terminus, passage tickets are sold and baggage checked over all the roads, a person purchasing at one terminus a passage ticket over all the roads, and receiving at the same time a check for his baggage over the entire route, may recover of the company of whom such ticket was purchased the value of the baggage, in case the same is lost.

THIS action was brought by the plaintiff to recover for baggage delivered to the defendant at Toledo to be carried to Buffalo and there delivered to the passenger to whom it belonged, the plaintiff's assignor. The cause was tried at the Oneida circuit, before PRATT, J. and a jury. The defendant is a corporation organized and constituted under the laws of Ohio, for the construction and operation of a rail road for the transportation of freight and passengers between Toledo and Cleveland in that state. Between Cleveland and Buffalo, two other rail road companies—the Cleveland, Painesville and Ashtabula, and the Buffalo and State Line—were in operation. At Buffalo and Toledo tickets were sold and baggage was checked over the whole route. On the 12th of February, 1856, the plaintiff's assignor bought of the defendant's agent at Toledo passage tickets for Buffalo over their roads, and de-

Cary *v.* Cleveland and Toledo Rail Road Company.

livered her baggage to the baggage agents of the defendant, who gave her a check entitling her to receive it at Buffalo. The cars did not arrive at Buffalo until late at night on the 13th of February, having been detained by storms and obstructions, and then the train in which she was a passenger, arrived at the same time with two other trains that had been detained by the same obstructions, and there was an unusual crowd of passengers, and accumulation of baggage, at the station. The car in which the plaintiff's assignor was, was not run into the car-house when the baggage was delivered. The plaintiff's assignor, a female traveling alone, did not claim her baggage that night, and on calling for it next morning it could not be found. The car-house and a large quantity of baggage was destroyed by fire during the night, and the evidence justified the conclusion that the trunk, the value of which with its contents was claimed in this action, was among the baggage destroyed.

The plaintiff had a verdict and judgment at the circuit, from which judgment the defendant appealed.

*C. Tracy*, for the appellant.

*F. Kernan*, for the respondent.

WM. F. ALLEN, J. A reversal of the judgment and a new trial is asked for, upon exceptions taken on the trial at the circuit. Only one or two questions were urged upon the argument of the appeal, yet as the counsel for the appellant has, in his printed points, taken the position that upon the whole evidence the plaintiff was not entitled to recover, and that the defendant's several exceptions were well taken, it becomes necessary to examine the several points made at the trial; and it will be convenient to examine them in the order in which they were taken.

At the close of the plaintiff's case the defendant's counsel moved for a nonsuit, on several grounds:

1. That the proof showed that the loss of the baggage occurred after it had been carried over the defendant's road.

2. That no demand on the defendant, for the baggage, had been proved.

3. That no contract on the part of the defendant to carry Miss Bedell, (the plaintiff's assignor,) or her trunk, beyond the termination of its road at Cleveland, had been proved.

4. That the proof was insufficient to sustain the cause of action alleged in the complaint.

At this stage of the trial no proof had been given of the actual loss of the trunk. It had been delivered to the defendant's servants at Toledo for carriage to Buffalo, and upon being demanded at Buffalo of the proper person, it had not been delivered to the claimant. There was, then, no evidence that the trunk had ever left Toledo, and although there was room for a surmise that it might have reached Buffalo and been destroyed in the fire and by the burning of the car house, there was no evidence of the fact upon which the court could act. The plaintiff relied upon the non-delivery of the trunk; and if the non-delivery was occasioned by a loss or destruction at a point or under circumstances which exonerated the defendant from liability, that fact had not then been proved. The demand made at Buffalo was clearly proved, and no question was raised that it was not made of the proper person. It was assumed that the person of whom the demand was made was the one who would have had the charge of the baggage on its arrival at Buffalo, with authority to deliver it to the proper owner. He was the general superintendent at the station at Buffalo, and as such, was the proper person of whom the demand should have been made. (*The Taff Vale Co.* v. *Giles,* 22 *Eng. Law and Eq.* 202.) Whether he was the agent of the defendant for the delivery of the baggage received at Toledo and checked by the defendant's servants over the intervening roads, will be considered in another connection, so far as it becomes important to do so. That there was no proof of a contract on the part of the defend-

Cary *v.* Cleveland and Toledo Rail Road Company.

ant to carry the lady and her baggage beyond the termination of its road, cannot be alleged. The proof was that she applied to the defendant's clerk and servant for a passage ticket by rail road from Toledo to Buffalo, and was furnished with tickets which carried her to Buffalo over the defendant's road and the other intermediate roads; and the defendant's clerk receiving the fare for the whole distance. Some contract was made by the defendant at that time, and if, upon the evidence, the defendant desired to make a question whether it was a contract for carriage by the defendant for the whole distance, or whether, in entering into the contract, the defendant represented and contracted for and in behalf of other corporations or individuals, as to a part of the distance, he was entitled to have such question passed upon by the jury; that is, if there was a doubt as to what the contract was, it was a proper question for the jury. But there was certainly evidence to carry the cause to the jury upon the question whether or not the defendant had contracted as alleged. The remaining point, that the proofs were insufficient to sustain the action, was not probably relied upon, aside from the specific questions made. The court properly denied the motion for a nonsuit. The defendant then gave evidence to show the connection and business relations to each other of the several rail roads forming the line between Toledo and Buffalo; that each road received the established fare for carrying each passenger over its road; that at Buffalo and Toledo tickets were sold for the whole distance; at the latter place, by the defendant's servants and agents, and at the former by the servants and agents of the Buffalo and State Line Rail Road Company; that the moneys received by the respective companies were deposited daily to the credit of the company by whom they were received; and that settlements were periodically made between the several companies. It was also proved that at Cleveland the passengers and baggage were changed to and from the defendant's cars, which did not pass over the roads of the other companies, and that separate

Cary v. Cleveland and Toledo Rail Road Company.

tickets for passage over the several roads, but printed on the same slip of paper, were issued to passengers purchasing at Buffalo and Toledo. Evidence was also given tending to show that the baggage in question was delivered by the defendant to the Cleveland, Painesville and Ashtabula Rail Road Company, at Cleveland, and that it arrived at Buffalo and was destroyed by fire the same night. The train upon which the plaintiff's assignor was a passenger was due at Buffalo about 5 o'clock in the afternoon and in time to connect with a train going east on the New York Central Rail Road, but was detained by obstructions, and did not arrive until about 10 o'clock in the evening and after the eastern train had left; and this arrived at the same time with two other trains which had also been detained by the same causes. The owner of the baggage did not claim it that evening, but went directly from her car, which could not enter the car house, to a hotel. There was an unusual crowd of passengers and accumulation of baggage. The car house, with much of the baggage, was destroyed that night, and the owner of the trunk in suit was unable to procure it when she called for it the next morning. The servants of the rail road companies were ready and offered to deliver the baggage that arrived on those trains the same evening, and did deliver all that was claimed.

At the close of the evidence the defendant's counsel again asked for a nonsuit, on the grounds:

1. That the defendant had not legal capacity or power, under or by its charter, to contract to carry a passenger or the trunk and contents beyond the limits of the state of Ohio; that the contract of the defendant to carry Miss Bedell and her trunk to Buffalo was illegal and void; and that the defendant was not estopped from repudiating the contract and insisting upon this defense; and

2. That the liability of the defendant as a common carrier ceased when the trunk arrived at Buffalo; and there was no evidence of any negligence at Buffalo whereby the trunk

Cary *v.* Cleveland and Toledo Rail Road Company.

was lost; and that the onus of proving such negligence was upon the plaintiff.

The motion was denied by the court; and as these two propositions in connection with those urged at the close of the plaintiff's case, somewhat modified in form, constitute the basis of the several exceptions to the charge or rulings of the judge in submitting the case to the jury, they may be considered in the same connection. The court charged the jury, 1st. That the defendant was not discharged by the delivery of the trunk in question to the Cleveland, Painesville and Ashtabula Rail Road Company; 2d. That the contract of the defendant was to deliver the trunk at Buffalo, and refused to change the converse of the first proposition.

As the question relating to the discharge of the defendant from liability by the delivery of the trunk to the Painesville road depends entirely upon the terms of the contract, and its validity, if for carriage of the passenger and her baggage east of Cleveland, the exceptions need not be farther considered in this connection, except to repeat the remark before made that the defendant did not ask to have the jury decide what the contract in fact was. Had it done so, and the court had decided it as matter of law, it might perhaps have been error. The counsel did not object that the court, by passing upon the question, invaded the province of the jury, but the exception was based rather upon the ground that the defendant had not contracted, because it could not lawfully contract for service beyond Cleveland. In *Muschamp* v. *The Lancaster and Preston Junction Railway Co.* (8 *M. & W.* 421,) in a case somewhat similar, it was treated by the court as a proper case for the jury to determine what the contract was; whether the railway company had undertaken to carry a parcel beyond the terminus of its road, or had agreed to carry it to its terminus and there deliver it to another carrier, for transportation. The court held that they could not say that the latter was the import of the contract, as was asked by the defendant to be decided in this case. It was assumed by the defendant's counsel to be a proper

question for the court, as there was no dispute about the evidence; and when a question is so treated the party cannot, upon appeal, insist that it should have been submitted to the jury. (*Barnes* v. *Perine,* 2 *Kernan,* 18.) If there was evidence upon which the jury might have found the contract as alleged by the plaintiff, rather than as claimed by the defendant, as a question of fact, the ruling and decision of the court will be sustained: in other words, there is no error for which the judgment will be reversed. That the evidence was sufficient to establish the contract in accordance with the ruling of the court, will be seen by cases which will be referred to in considering the power of the defendant to make such contract.

The court further charged, 3dly. That' she (the passenger and owner of the trunk) was not bound to get her trunk in the shortest possible time, but that she must take it within a reasonable time. 4th. That it was a question, under all the circumstances, for the jury, whether she claimed it in a reasonable time. That if the trunk was delivered to Miss Bedell (the owner) at Buffalo, so as to discharge the defendant from liability as a common carrier, the question then was whether there was negligence on the part of the Buffalo and State Line road, and if there was, then the defendant was liable. He refused to charge as matter of law that, before the fire occurred, the defendant was discharged from its liabilities as a common carrier by the delivery of the trunk at Buffalo, and its deposit in the baggage room without its having been called for; but in response to a request so to charge, instructed the jury that if Miss Bedell demanded the trunk in what, under all circumstances, was a reasonable time after its arrival, the defendant was not discharged; and if she did not demand it in a reasonable time, then the company would become warehousemen. If the Buffalo and State Line road company was guilty of negligence after its liability as a common carrier ceased, and its duty as warehousemen commenced, the defendant was still liable for the trunk. There is no claim that the trunk was in truth delivered to Miss Bedell at Buffalo, and

therefore what was said by the judge in that connection, in regard to the liability of the defendant for subsequent negligence of the Buffalo and State Line Rail Road Company in further caring for the property, was irrelevant and need not be considered here. The relative rights of passengers and rail road companies in regard to the delivery of the luggage at the end of the passage, and the liabilities of the companies in respect to it, and the time when their responsibility as carriers cease, has not been much discussed, so far as adjudged cases have come under my notice. The duties which the proprietors of rail roads owe to their passengers, in respect to their baggage, are not in all respects analogous to the duties resulting from the ordinary contract for the carriage of merchandise, or from the liabilities of a common carrier of merchandise. Still the rules which govern that class of bailments furnish, in most cases, the rules by which rights and liabilities of passengers and rail road proprietors may be determined. The court, in *Thomas* v. *Boston and Prov. R. R. Corporation*, (10 *Metc.* 472,) in which it was held that proprietors of a rail road, who transport goods over their road and deposit them in their warehouse without charge until the owner or consignee has a reasonable time to take them away, are not liable as common carriers for the loss of the goods from the warehouse, but are liable as depositaries, only for want of ordinary care, carefully avoided expressing an opinion as to the liability of the company for the baggage of passengers. Hubbard, J., says : " Neither do we intend to discuss the rights of passengers on rail roads in regard to their persons and baggage, nor the peculiar liabilities of the proprietors in regard to both. We confine ourselves strictly to the case of merchandise deposited after it has been transported to its place of destination." If the rule is that the liability of the carrier of persons and their baggage, as a carrier of the baggage, ceases at the instant of its arrival at the terminus at which it is to be delivered, or as soon as it can be claimed by and delivered to the owner, then the charge of the judge was erroneous in the case before us.

The fair import of the charge was that the passenger was not bound at once to demand his baggage, but that he had a reasonable time within which to make the demand, and that the liability of the road as carriers continued until such reasonable time had elapsed; and that such reasonable time was to be determined from all the circumstances of each case. That if the baggage was left beyond a reasonable time, the character of the bailment changed and the proprietors of the road were liable as warehousemen simply, to be charged only for want of ordinary care. *Norway Plains Company* v. *Boston and Maine Rail Road Company,* (1 *Gray,* 263,) was an action against the rail road company as common carriers. The principle of *Thomas* v. *The Boston and Providence Rail Road Company* was applied, and it was held that the proprietors of a rail road who transport goods over their road for hire and deposit them in their warehouse, without additional charge, until the owner or consignee has a reasonable time to take them away, are not liable as common carriers for the loss of the goods by fire, without any negligence or default on their part after the goods are unladen from the cars and placed in the warehouse, but are liable as warehousemen only; although the owner or consignee has no opportunity to take the goods away before the fire.

Chief Justice Shaw says that the contract is "that they will carry the goods safely to the place of destination and there discharge them on the platform, and then and there deliver them to the consignee or party entitled to receive them, if he is there ready to take them forthwith; or if the consignee is not there, ready to take them, then to place them securely and keep them safely a reasonable time, ready to be delivered when called for. * * * This we consider to be one entire contract for hire, although there is no separate charge for storage, yet the freight to be paid, fixed by the company as a compensation for the whole service, is paid as well for the temporary storage as for the carriage. * * * From this view of the duty and implied contract of the carriers by rail road, we think there result two distinct liabilities : first, that of common carriers,

and afterwards that of keepers for hire or warehouse keepers; the obligations of each of which is regulated by law." Upon the assumption that the defendant was liable as a contractor to carry Miss Bedell and her trunk to Buffalo and there to deliver to her the trunk, the argument of Chief Justice Shaw sustains the charge of the court upon the trial of this action, to the effect that on proving neglect of the Buffalo and State Line road as warehouse keepers, the defendants would be liable.

There was but one contract, one hiring and one consideration paid for the carriage and storage of the baggage; the contract for storing resulting from and being an incident to the main contract for carriage. It follows that the party liable upon the main and express contract is liable upon the incidental and implied contract, and the Buffalo and State Line road, in the storage as in the carriage of the trunk, must be deemed the agent of the defendant, performing its contract.

It would be unbecoming in me to review the decision of the very able court, and the argument of the very learned judge by whom the opinion in the case cited was delivered. But it is open to the remark that it is highly favorable to carriers of merchandise by rail road, and much more favorable than the rule which in analogous cases has been applied to carriers by water or in any other way. It would hold the consignees to a constant watch at the rail road freight depots lest their goods might arrive and be stored in the warehouse of the company before they had knowledge of their arrival, and that without insurance or the responsibility of the carriers, except in the limited capacity of warehouse keepers. In the same case it is intimated that rail road companies are not required to give notice to consignees of the arrival of their goods.

It makes two distinct contracts where the parties make but one. The duty to deliver at the terminus imposes upon the consignee the corresponding duty of receiving the goods at the same place. The freight has been earned, and if further duty or responsibility is imposed upon the bailee it should only be upon a new consideration and under a new contract, express

or implied; but within the decision the bailee, having per-
formed his duty as carrier, for which he receives an agreed
compensation, is subjected, at the option of the consignee, to
a further liability under a different bailment.   The consignee
who receives his goods at the platform, on their arrival, but
performs his obligation and has had the full benefit of the
contract of the carrier, and yet a negligent consignee not per-
forming his contract is entitled to exact a further service from
the carrier, and this simply to the end that the liability of the
bailee as carrier may cease at the earliest possible moment and
by a strict construction of the contract in his behalf, or rather
by a construction complicated and against the interests of the
consignee.   A more simple interpretation, and one to my mind
more reasonable and more in accordance with the analogies of
law, would be to call the contract one of carriage simply and
not contemplating storage, and that the contract was to be
reasonably performed by both parties ; the carrier to deliver
upon reasonable request, and at reasonable hours ; the con-
signee to call for and receive his goods as soon as reasonably
could be, in accordance with the usage of the place and the
nature of the merchandise.   If the property is not taken away
by the consignee within a reasonable time, then the carrier
may relieve himself from further liability by storing it in a
suitable place, at the risk and expense of the owner or con-
signee.   The transit in such case, and the liability of the car-
rier, would cease after the owner or consignee should and
might have taken his property.   (*See* 2 *Kent's Com.* 604, 605.
*Pickett* v. *Dorman,* 4 *Verm. Rep.* 21.)   Notice to the con-
signee, within the authority cited, is necessary to discharge
the carrier without actual delivery to the consignee and by de-
livering at the usual place of delivery.   In *Pickett* v. *Dorman*
it was held that the carrier was liable because he did not con-
tinue his care until he had given notice to the owner, and un-
til the latter had a reasonable time to assume the care of
them.   Judge Story expresses the duty of carriers in this wise :
"It is safely and securely to carry the goods to their place of

Cary v. Cleveland and Toledo Rail Road Company.

destination and there to deliver them, in a reasonable time and in a reasonable manner. It is not sufficient to carry the goods to their place of destination and there place them on a wharf, but due notice should be given to the consignee of their arrival, and the goods be placed in a safe custody, so that he may, upon such notice, receive them in a reasonable time." (*Story on Bailment*, § 509.) The distinction appears to be this, that if the goods are put into the warehouse of the carrier, for safe keeping, until they can be delivered according to the usage of the place, they are still at the risk of the carrier; but if they are deposited to await the owner's convenience in sending for them, the bailee is only liable as a warehouseman. (*Story on Bailment*, §§ 467, 448, 541. *Hyde* v. *Trenton Navigation Co.*, 5 *T. R.* 389.) The responsibility of the carrier ceases when the delivery is either completed or waived by the owner. (*Story on Bailment*, § 542.) As to the necessity of notice to the consignee, see *Gibson* v. *Culver*, (17 *Wend.* 305.) In *Cole* v. *Goodwin*, (19 *id.* 251,) it was decided that the omission of a passenger in a stage-coach to claim his baggage at the end of his journey where the stage stopped about an hour, and where there was no change of coaches, did not release the carrier from liability for the trunk, which was carried off in the coach and lost. The case was decided upon the ground that the loss was occasioned by the act of the carrier, whose duty it was to deliver the trunk at the place without demand on the part of the owner. The loss would not have occurred had the passenger claimed his trunk at the instant of its arrival, or at any time within the hour that the coach remained at the place where the passenger left it. If, from the time of the arrival of the coach, the proprietors were mere depositaries, holding the property subject to the direction of the owner; then the negligence of the owner in not calling for the trunk within a reasonable time would have been material; but the court held that the liability of the defendants was that of common carriers, and the negligence of the plaintiff in looking after his baggage did not tend to discharge them. When

goods are safely conveyed to the place of destination, the carrier is prima facie bound to deliver the goods to the consignee personally; or in case of carriage by boats or ships, and as it would seem by railway, notice of the arrival and place of deposit, comes in place of actual delivery. In case the consignee is dead, absent, or refuses to receive or is not known and cannot after due inquiry be found, the carrier may discharge himself by placing the goods in store with some responsible third person in that business, for and on account of the owner. (*Fisk* v. *Newton*, 1 *Denio*, 45.)

The precise point involved in this case was decided by the court for the correction of errors in *Powell* v. *Myers*, (26 *Wend.* 591.) It was there decided that common carriers of passengers and their baggage were liable for the latter until its safe delivery to the owner. Although the point was not involved in the case, it was intimated in the opinion of Senator Verplanck, that although the arrival of a steamboat at its place of destination, with the baggage in safety, would not discharge the carrier until its delivery to the owner, still, unless demanded within a reasonable time, the liability of the owner of the boat, in his strict character of a common carrier, would not continue. The action was for a trunk and its contents, with which the plaintiff's son, a minor, took passage in the defendant's boat at West Point for New York, arriving at New York between 9 and 10 o'clock in the evening. Before arriving at New York, the son asked the captain of the boat if baggage would be safe on the boat over night, and was told it would, and the young man went on shore on arriving at New York, and returned next morning for his trunk, when it had been delivered to a negro, on a feigned order. The judge charged the jury that the defendants were responsible for the delivery of the baggage of travelers in their boat, unless it was lost by inevitable accident; that if the trunk had not been delivered to the passenger, and had not been so lost, the defendant remained liable even after the boat arrived at the wharf. There was a verdict for the plaintiff, and the supreme

Cary *v.* Cleveland and Toledo Rail Road Company.

court affirmed the judgment of the New York common pleas, on the authority of *Hollister* v. *Nowlen*, (19 *Wend.* 234, and *Cole* v. *Goodwin, supra;*) and the court for the correction of errors held the affirmance right. The chancellor, after alluding to the facts, says, "The jury, therefore, were right in concluding that the baggage left on board was in the custody of the master, in his capacity of common carrier, until it was called for at the usual time in the morning after his arrival at the place of destination." Senator Verplanck says, "Another important point is presented in this case: this is, that the carrier's responsibility does not terminate by arrival at the place of destination,‍ but continues unchanged until due delivery, unless he is otherwise before discharged of his peculiar custody as carrier." *Price* v. *Powell* (3 *Comst.* 322) decides that the responsibility of a carrier by water continues after the arrival at the port of destination, and until the consignee has notice of the arrival, and has had a reasonable time to receive the goods. In that case, as in this, it was submitted to the jury to say whether the party entitled to receive the goods acted within a reasonable time. (*And see Hoskins* v. *Hamilton Mutual Ins. Co.* 5 *Gray*, 432.) The circumstances of this case were peculiar, and it would have been unreasonable to require the lady who owned this baggage to demand it on the evening of its arrival at Buffalo, under the penalty of discharging the carrier from responsibility for its safe keeping. It is doubtful whether any female would have had physical strength to succeed, in that crowd, in obtaining possession of a parcel; and no one was called upon to undertake it at the peril of her person and the risk of her health. It was quite late in an inclement night, at the time of the arrival of the trains; and the plaintiff was unable to continue her journey east, as she had expected to do, by reason of the failure of the defendant and its associates to make their ordinary running time. Three passenger trains arrived at the same time, carrying an unusual crowd of passengers, and a corresponding accumulation of baggage, so much so that the usual places

for storing baggage were entirely insufficient for the purpose. It took until nearly twelve o'clock at night to dispose of the baggage. The car in which Miss Bedell was a passenger was excluded from the car house, for want of room, and she very prudently went directly from the car to a hotel, retaining the defendant's check as her voucher for her baggage. This part of the case was properly disposed of at the circuit.

The only remaining question is as to the power of the defendant to assume the liability alleged, and in respect to which the court charged the jury, 5thly, that the defendant had power to make the contract, and was bound by it. That contracts entered into by corporations for purposes and objects not warranted by their charters, either under the direct grant of power, or as incidental to it, as tending to promote the general purposes for which the charter was granted, are void as *ultra vires*, must be conceded. In the language of Ch. J. Marshall, a corporation "possesses only those properties which the character of its creation confers upon it, either expressly or as incidental to its very existence." (*Dartmouth College* v. *Woodward*, 4 *Wheat.* 636.) It has no other powers than such as are specifically granted, or are necessary to carry such powers into effect. (*People* v. *Utica Ins. Co.*, 15 *John.* 358. *New York Firemen Ins. Co.* v. *Ely*, 2 *Cow.* 678. *Life and Fire Ins. Co.* v. *Mechanic Fire Ins. Co.*, 7 *Wend.* 31, *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 3 *Kern.* 599.)

The defendant became incorporated under the laws of the state of Ohio, and this fact was urged upon the argument with much earnestness, as having an important bearing upon the question of power to make the contract alleged by the plaintiff. It is true, that corporations only exist within the territory by the laws of which they are created; the laws creating them having no extra territorial force. But their existence is nevertheless recognized without the state under which they derive their existence, and they are permitted to contract, and to sue and be sued in other states. By the comity of nations, as administered by courts, a corporation

Cary *v.* Cleveland and Toledo Rail Road Company.

created by the laws of a foreign state is permited to contract in other states in matters not contrary to the known policy of the state, or injurious to its interests; or as it is better expressed in *Bard* v. *Poole,* (2 *Kern.* 495,) "a foreign corporation may make and enforce within this state contracts which by its charter it is competent to enter into, and which are not forbidden by the laws or contrary to the policy of the state." Judge Denio says, "It is, of course, implied that the contract must be one which the foreign corporation is permitted by its charter to make; and it must also be one which would be valid, if made at the same place by a natural person, not a resident of the state." Foreign corporations are permitted to sue and be sued in the courts of states other than that by which they are created, and within which they have a residence, so far as a corporation aggregate can be said to have a residence. Taney, Ch. J., says, "It is nothing more than the admission of the existence of an artificial person created by the law of another state, and clothed with the power of making certain contracts. It is but the usual comity of re-cognizing the law of another state." (*Bank of Augusta* v. *Earle,* 13 *Peters,* 519. *Mutual Benefit Ins. Co.* v. *Davis,* 2 *Kern.* 569. *Remsen* v. *Costar,* 14 *Peters,* 122. *Silver Lake Bank* v. *North,* 4 *John. Ch. R.* 370. *British Am. Land Co.* v. *Ames,* 6 *Metc.* 391.) These cases lay down the general principle, with modifications and qualifications, which are engrafted upon it, and which are most frequently brought into view in its application. There being nothing in the policy or the statutes of our state which would avoid a contract made by a natural person at Toledo precisely like the one alleged to have been made by the defendant, the question is, whether it is one which the defendant was permitted to make by its charter. It does not affect the principle that the contract was for the transportation of a passenger and her baggage beyond the territorial limits of the state of Ohio. If a contract to carry a person from Toledo to Painesville within the state of Ohio, a place beyond the terminus of the

defendant's road, would be valid, then a like contract to transport to Buffalo would be valid. The question does not depend upon the state line, but upon corporate power. So long as the existence of the corporation, and power to contract within the limits fixed by the power by which it was created are conceded, the same force and effect must be given to its contracts as if it had been created by the laws of this state. Contracts should be palpably *ultra vires* before they should be held to be void for that reason, at the instance of the company, as against innocent third persons dealing with it. Corporations should be restricted, so far as courts can in the exercise of their powers limit them, to the exercise of their legitimate functions, but the plea is not a gracious one, that a contract which they have deliberately made, and of which they have received the full benefit, is void for want of power in them to make it. Eminent judges have expressed regret that covenants entered into deliberately, and with fair intentions on both sides, should be resisted on the ground of *ultra vires;* "a sentiment," says Lord Campbell, after quoting it from Lord St. Leonard, "in which we should all concur." (*Mayor of Norwalk* v. *Norfolk Railway*, 4 E. & B. 446.) Erle, J., in the case last cited, conceding that it stood decided that a statute incorporating a company for public purposes prohibits by implication some contracts, claims that the principle by which that prohibition is to be implied, and the class of prohibited contracts is to be defined, is not laid down with the precision that removes doubt, and advances the opinion that the legality of this doctrine of an implied prohibition could be properly discussed only in a court of error. But acts of a corporation, not within the corporate power, *ultra vires*, are void, and the contracting parties are not estopped by the contract itself from alleging the invalidity when they are sought to be enforced. (*Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.* 3 *Kern.* 599.) It would seem from the reasoning of Judge Comstock, in the case cited, that there could be no case in which the corporation would be estopped from setting up a

want of power to make the contract upon which it is sought to be charged. Whether the learned judge intended to be so understood, is not material in this case, for the reason that there is no circumstance upon which an estoppel can be predicated in the case before us. No fraud was practised upon the other contracting party; and if the contract could not take effect as the contract of the defendant, for want of power to make it, it could take effect in another way consistent with law and the intention of the several rail roads interested in it. Certain contracts have been held *ultra vires,* when made by rail road corporations, but they have been for the construction of some independent work not embraced within the line of the road which they have been authorized to make, and having no necessary connection with the work for which they were incorporated. The principle of these decisions may be referred to the expression of Lord Campbell, in *Mayor of Norwich* v. *Norfolk Railway Co. supra,* " They (railway companies) have certain powers unconnected with locality; but they have other powers which may be denominated territorial, and these can only be exercised within the area specified by the act of parliament creating the company. They cannot lawfully extend the railway beyond the prescribed limits, or alter the line on which it is to be constructed." While, in respect to acts which within the remark of Lord Campbell, are "territorial" in their character, such as the purchase and holding of real estate, the construction of the railway, harbor, depot, and the like, they cannot be upheld, if done without the limits of the territory within which the corporation is permitted to act, for the reason that they may tend to advance the objects of the incorporation, to increase the tariff upon the railway, or increase the profits of the shareholders, (*per Lord Langdale* in *Coleman* v. *Eastern Counties Railway Co.,* 10 *Beav.* 1,) the rule is not the same as to acts " unconnected with locality;" and in such cases acts in furtherance of the main object and for the purpose of effectuating it, are valid, if not illegal by the law of the place where they are performed and not

expressly prohibited by the charter. This distinction is recognized in all the cases, in fact, although not perhaps in words; and there is no discrepancy between the cases holding one class of contracts void and another valid. Those cases in which railway companies have been held to their contracts to be performed beyond the termini of their road, and outside of their territorial limits, when such are personal in their nature, and within the general scope of the powers conferred, are not cited as bearing upon or treated as overruled, by the cases avoiding contracts of a different character. The converse is equally true. The cases are not treated as coming in conflict with each other. *The Mayor of Norwich* v. *The Norfolk Railway Co.* (4 *E. & B.* 397) was not decided, except *pro forma* by the withdrawal of the opinion of the junior judge, to enable the parties to bring error. It was a border case; and if the contract was void it was for the reason urged by Lord Campbell, that it contemplated an act which the company could only perform within prescribed limits. *The East Anglian Railway Co.* v. *Eastern Counties Railway Co.* (11 *C. B.* 775) was the case of a contract of a like character; and Jervis, C. J., in delivering the opinion of the court, says, "It is clear that the defendants have a limited authority only, and are a corporation only for the purpose of making and maintaining the railway sanctioned by the act, and that their funds can only be applied for the purposes directed and provided for by the statute." So in *The Caledonia and Dumbartonshire Junction Railway Co.* v. *The Holmsburgh Harbor Trustees*, decided by the House of Lords in 1857, and reported in 39 *English Law and Eq. Rep.* 28, it was held that the contract being to expend money in the construction of a harbor not contemplated by the act of incorporation, was void as *ultra vires.*

The Connecticut cases of *Wood* v. *New York and New Haven Rail Road Company*, (22 *Conn. Rep.* 1,) and *Naugatuck Rail Road Company* v. *Waterbury Button Company*, (24 *id.* 468,) carry the principle of limitations upon the cor-

porate power of railway companies to a greater extent. If there were no decision in our own courts, and the English courts, adverse to them, I should content myself by yielding to their authority and leaving it for the court of appeals to review them. But the cases in our own courts are of paramount authority, and they are sustained by the English cases, so far as the question before us has been considered by the English courts.

The contract which was enforced in *Muschamp* v. *Lancaster and Preston Junction Railway Company*, (8 *M. & W.* 421,) was on all fours with this, so·far as it was affected by the question of power. A parcel was delivered at Lancaster to the Lancaster and Preston Railway Company, directed to a place in Derbyshire. The person who brought it to the station offered to pay the carriage, but the bookkeeper said it had better be paid on its delivery. The L. and P. Railway Co. were known to be proprietors of the line only as far as Preston, where the railway connects with the North Union line, and that further on with the road of another company, and so on into Derbyshire. The parcel was lost after it was forwarded from Preston. It was held that the L. and P. Railway Co. was liable. The judge charged the jury that when a common carrier takes into his care a parcel directed to a particular place, and does not by positive agreement limit his responsibility to a part only of the distance, it was prima facie evidence of an undertaking on his part to carry the parcel to the place to which it is directed, although beyond the limits of his ordinary trade as a carrier. Lord Abinger, chief justice, held that what was the contract was properly submitted to the jury. *Watson* v. *The Ambergate, Nottingham and Boston Railway Company*, (3 *Eng. L. and Eq. R.* 497,) affirms in the queen's bench the doctrine of *Muschamp's case*, with this variation from it in circumstance—that in *Watson's case* the clerk of the railway company received pay for the carriage over the defendant's line, only. See also *Scottham* v. *The South Staffordshire Railway Company*, (18 *Eng. L. and Eq. R.* 553,)

to the same effect. In *Weed* v. *The Saratoga and Schenec-tady Rail Road Company*, (19 *Wend.* 534,) although the case went off upon another point, Judge Cowen says: " The defendants having undertaken to carry from the Springs to Albany, cannot now be received to say they were in truth carriers no farther than Schenectady, the termination of their own road. As to the parties for whom they may thus undertake, they are estopped to deny that they are carriers for a distance commensurate with what they engage for." The precise point was involved and decided in *Hart* v. *The Rensselaer and Saratoga Rail Road Company*, (4 *Seld.* 37.) The marginal note of the case is, " Where three separate rail road companies, owning distinct portions of a continuous rail road between two termini, run their cars over the whole road, employing the same agents to sell passage tickets and receive baggage to be carried over the entire road, an action may be maintained against one of them for the loss of baggage received at one terminus to be carried over the whole road." The facts of the case required this decision to sustain the judgment of the supreme court, and two principles were directly and necessarily decided : 1. That several rail road companies may so unite in the carrying on of their business as that each shall become carriers and responsible as such over the lines of the road of the other companies, and beyond their own proper terminus ; and 2dly. That a rail road company may become liable upon the contracts of its agents, and the receipt of freight and baggage at a point at the terminus of the continuous line farthest from its own line. The defendants' agent received the baggage in question at Whitehall; the defendants' road terminated at Ballston ; two other companies completing the line to Whitehall. This case was decided on the same principle which governed *Bard* v. *Poole*, (2 *Kern.* 495,) where the question of power was the principal question considered, and *Bank of Augusta* v. *Earle*, (13 *Peters*, 587.) The principle is reaffirmed in *Quimby* v. *Vanderbilt*, (17 *N. Y. Rep.* 306,) decided by the court of appeals in June, 1858, in

Cary *v.* Cleveland and Toledo Rail Road Company.

which the English cases, *Muschamp* v. *Lancaster and Preston Railway Co.* and *Watson* v. *The Ambergate &c. Railway Company*, are cited with approbation; and the defendant was in that case held liable under circumstances on all fours with this case, except that the defendant was a natural person. The course of legislation in this state plainly recognizes a union between connecting and continuous rail roads, precisely of the character of that adopted between the defendants and the road intermediate to Buffalo. Chapter 222 of the laws of 1847 was passed to facilitate and compel such arrangements where the facilities contemplated were not voluntarily granted. So far from treating such arrangements as *ultra vires* the corporations, the act regards them as directly within the chartered limits of power, and as calculated to promote the public objects of the incorporation. The act provides for an interchange of facilities in the transportation of cars, passengers, baggage and freight over connecting rail roads, and for the furnishing of baggage tickets over the connecting roads. The act is not an enabling but a regulating act. It does further the public interests, to advance which rail road companies are incorporated, to permit them while contracting for freight and passengers over their own lines, to contract for the carriage beyond their own lines, employing as their agents beyond their termini such instrumentalities as it is lawful for them to do; and if the Cleveland, Painesville and Ashtabula road agree to perform the contracts of the defendants by carrying freight and passengers for which the defendants have received their pay, the public interests do not suffer. Before the consolidation of the several rail road companies between Albany and Buffalo, it would have been intolerable had passengers been compelled to buy at the proper stations of each company on its own line a ticket for passage over its road, and to see that their baggage was properly delivered by one company to the next in succession, and rechecked, or upon seeking to recover for baggage lost in transit if checked for the whole distance, it was incumbent upon the owner to prove upon what partic-

ular road the baggage was lost or received injury. This would have been the situation of the passengers as well as freighters, if the doctrine contended for here is to be upheld, and that of *Hart* v. *The Rensselaer and Saratoga Rail Road Company* repudiated. If that case truly expressed the law, then the owner of merchandise could have contracted with the Mohawk and Hudson Rail Road Company for its carriage to Buffalo, and would have had the guaranty of that company for the performance of the contract. But if the Connecticut cases are law, then the owner of merchandise, in order to make certain its conveyance to Buffalo by rail road, would have had to make new contracts at Schenectady, Utica, Syracuse, Auburn, Rochester and Attica. Each road would have performed its contract as carriers by transporting it over its road and delivering it at its station. The next road was not bound to receive it, nor was the road over which it had come bound to deliver it on board of the cars of the next road, and there could have been no running of the cars of one road over that of another company. In a case like this the companies do not seek to exercise any franchise, beyond the limits of their respective road. They employ such agencies as are allowed by law, to do the work which they have agreed to perform. (*See* 1 *R. S. 4th ed.* 1240, § 53.) The contract was one within the power of the defendant to make; and the judgment must be affirmed.

MULLIN, J., concurred.

BACON, J., concurred, on all the propositions except as to the liability of the defendant after the arrival of the property at Buffalo; holding that the liability ceased on the arrival of the cars at that city and the readiness or offer of the agents to deliver the baggage to passengers at that point, upon the authority of *Norway Plains Company* v. *Boston and Maine Rail Road*, (1 *Gray*, 263.)          Judgment affirmed.

[ONONDAGA GENERAL TERM, January 4, 1859. *Bacon, W. F. Allen* and *Mullin*, Justices.]