DAVID WAIT, Respondent, *v*. THE ALBANY AND SUSQUEHANNA RAILROAD COMPANY, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

A railroad company is not bound by the contract of its agent, for transportation beyond the termini of its road, in the absence of express authority given him in that respect, and where the making of such contracts has not become an established business of the road by the custom of those having general authority in its management.

APPEAL by the defendant from a judgment of the Otsego County Court, affirming a judgment rendered in Justice's Court.

In December, 1866, the defendant operated a railroad with its eastern terminus at Albany. One Race was its agent at Otego. He had no power *or authority* from the defendant, or any of its officers or agents, to make a contract to carry freight beyond the line of its road.

The evidence, however, authorized the court to find that, assuming to act for defendant, he agreed with the plaintiff and his assignee to carry a quantity of butter from defendant's station at Otego to the city of New York for sixty-one cents per hundred.

On the 19th of December, 1866, plaintiff delivered 130 packages of butter at defendant's station at Otego, for which Race gave plaintiff an agreement on behalf of the defendant, that the same had been received, and " which we agree to deliver at our freight station at Albany."

The written part of the agreement Race had power to make, and was as follows:

"ALBANY AND SUSQUEHANNA RAILROAD,
        OTEGO STATION, *December* 19, 1866.

"Received from D. Wait, in apparent good order, the following articles: 130 packages of butter, marked 'B. W. Nelson, N. Y.,' which we agree to deliver at our freight station in Albany.

"H. M. RACE, *Agent*."

The verbal part of the agreement raised the question of the agent's power and the defendant's liability.

The butter was received in New York. The freight exceeded sixty-one cents per hundred, which plaintiff paid. The justice rendered judgment for plaintiff for less than this sum.

The defendant appealed to the County Court, where the judgment was affirmed, and it appealed to this court.

*N. C. Moak*, for the appellant.

*M. Hale*, for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

POTTER, J. The first question arising upon this appeal is, whether the local station agent, Race, had power to bind the defendant by a contract to carry freight beyond its line, if not against express instructions to the contrary from its officers, yet clearly without authority to do so.

As the cases cited by the appellant's counsel, to the point that parties dealing with an agent are bound to take notice of his authority, apply only to special powers of agency, the question must be determined by ascertaining whether or not the power to make the contract stated was within the general scope of the agent's *apparent* authority.

By the charter of the road its business is confined to its line; and by what is known as the "American rule," established in the leading case of *Van Santvoord* v. *St. John* (6 Hill, 159), freight delivered to a carrier, marked to a point beyond its line, is, so far as the receiving carrier's business is

concerned, only to be delivered to the next carrier according to usage. Strictly speaking, then, the business of a carrier, such as the defendant, is confined to its own line; and the general scope of its subordinate agents' authority must be limited to its business. Beyond that point they are *for warders.*

But the rule is now established that a carrier, though limited like the defendant to the business of transportation over its own line, may make valid contracts to carry freight over other lines (*Hart* v. *R. and S. R. R. Co.*, 4 Seld., 37; *Cary* v. *C. and T. R. R. Co.*, 29 Barb., 35; *Buffett* v. *T. and B. R. R. Co.*, 40 N. Y., 169); and the question arises, whether by this rule the usual business of a corporation can be considered to have been enlarged from transportation over its own line to transportation everywhere.

I am of the opinion that such is not the effect of the rule. Suppose a corporation, created with power to build and operate a railroad from Albany to Buffalo, which, in fact, builds and operates its line from Albany to Syracuse only, the *fact* is, that its business is confined to carriage between the last named cities; but its officers have *power*, if they choose, to extend its line to Buffalo, and when they have done so, its business will also be so extended. In the present case, the defendant operated a line of railroad from Binghamton to Albany, and its business is, *in fact*, limited to carriage between those points. Its officers, however, by the rule referred to, have *power* to extend its business by arrangement with other companies or otherwise (40 N. Y., 169) to any part of the country, or perhaps of the earth. (14 C. B., 256.) But there is no proof that they have made any such arrangement; and until they see fit to do so, the extent of the defendant's business is limited to the line which it actually operates.

I am of the opinion, therefore, that the power in a railroad corporation to make a contract to carry beyond its line is coincident with the power to make contracts for transportation with other carriers, and it is confined to the governing

officers of the corporation, and that its subordinate agents do not possess that power unless it has been expressly conferred upon them, or has been so exercised by those who exercise the general authority as to have become the established business of the road.

In the cases in this State where such contracts have been held to be valid, with one exception to be noticed presently, this question was not raised; but it is fairly to be presumed that the subordinate agents had authority, since they were either cases where tickets were sold and baggage checked for passengers (*Hart* v. *R. & S. R. R. Co.*, 4 Seld., 37; *Cary* v. *C. & T. R. R. Co.*, 29 Barb., 35); or through passage fare had been taken (*Weed* v. *S. & S. R. R. Co.*, 19 Wend., 537); or printed bills of lading given (*Krender* v. *Wolcott*, 1 Hilt., 227; *Le Sage* v. *G. W. R. Co. & D. & M. R. R. Co.* 1 Daly, 307); and *Foy* v. *T. & B. R. R. Co.*, 24 Barb. 382, opposed, as holding the contrary doctrine, to that of *Van Santvoord* v. *St. John*. And like remarks may be made concerning the cases in 19 Wisconsin, 118, and 9 Iowa, 487.

The English case reported in 18 English Law and Equity, 557, note (*Wilson* v. *G. N. & B. R. Co.*), was decided upon a different rule of law from that which prevails in this State. The English cases go so far as to hold that a countermand given to a subordinate agent of a connecting company will, if disregarded, render the company which originally received the goods liable. (*Scothom* v. *S. S. R. Co.*, 8 Exch., 341.)

It remains only to consider the case of *Schroeder* v. *H. R. R. R. Co.* (5 Duer, 55), relied upon by the respondent's counsel. A written contract to convey goods to Chicago was in that case given to the plaintiff by one of the defendant's subordinate agents, who had no authority to make such contracts; and it was proved that to carry freight beyond its line was not a part of the defendant's business, although it was accustomed so to carry passengers' baggage. But there was *an admission in the pleadings, that the defendant was a common carrier from New York to Chicago*, and the court

at Special Term held that "the fact proved, that the defendant did not receive property, like that in question, to be carried by them to and delivered at a point beyond Albany, cannot *in this case* be made available to them *against an express admission in the pleadings to the contrary*," and that the defendants were bound by the contract. Upon appeal, the judgment was affirmed. It is true that it was said: "Even had the answer been amended as was desired, we cannot see that the amendment would have helped the defendants; for, admitting that they were not common carriers from New York to Chicago, we must still have held that they were liable for their breach of a positive contract;" but this remark was not necessary to the decision of the case, and the learned justice who wrote the opinion, and who was also the reporter, has corrected the statement in his headnote to the case.

It is my opinion, therefore, that there is no authority adverse to the construction of the law as already given in this opinion, and that construction has the direct sanction of the Supreme Court of Massachusetts. (*Burroughs* v. *N. and W. R. R. Co.*, 100 Mass., 28.)

There remains to consider whether the evidence shows a ratification of the plaintiff's claim. It appears that the plaintiff had been compelled to pay a much larger sum for freight to New York than had been agreed by Race; that he had demanded a settlement, and that Race had agreed with him to carry freight for him to Albany for five cents less than the usual price. And then Race testifies: "I wrote to G. W. Church, general freight agent, to get his consent to the arrangement; I received a reply from Mr. Church, and he ratified and consented." It does not appear whether Church knew that it was in settlement of the plaintiff's claim; but admitting that he did, I am of the opinion that these facts do not amount to a *ratification;* there must be an intent to ratify. (Story on Agency, §§ 252, 256; *Keeler* v. *Salisbury*, 33 N. Y., 652; *Edwards* v. *L. and N. W. R. Co.*, Law Rep., 5 C. P., 449.) But an assent to this *compro*

*mise* does not necessarily imply an acknowledgment of a general liability. In the case of *Wright* v. *Burbank* (64 Penn. St., 247), cited by respondent's counsel, the principal recognized the debt contracted by his agent; and authorized a third party to pay it out of funds in his hands. But in this case Race had denied to Church that he had ever made the original contract; and *non constat*, the compromise was assented to, to prevent the dispute from coming to a crisis.

I am, therefore, of the opinion that the judgment of the Justice's Court and of the County Court should be reversed, with costs.

Judgment reversed.