JAMES TALCOTT, Respondent, *v.* THE WABASH RAIL-
ROAD COMPANY, Appellant.

*Common carriers — when not liable for merchandise of a third person checked by a
passenger as baggage — effect of an assignment of a "claim" — liability for an
accident on a connecting road.*

The Wabash Western Railway Company, the Grand Trunk Railway Company
and the West Shore Railway Company formed a through line from Detroit to
Chicago and to New York. Coupon tickets were sold, the coupon of each com-
pany being for transportation over its own portion of the road.

F. H. Cullom, who was employed by James Talcott as a commercial traveler,
purchased, at the Chicago office of the Wabash Western Railway Company,
such a ticket from Chicago to New York and return over the route described.
He had four trunks, three belonging to Talcott and one to certain corporations;
in the Talcott trunks were certain articles of baggage belonging to Cullom. He
checked the trunks from Chicago to New York; told the baggage agent that
the trunks contained samples of underwear : paid for the extra weight and
received a card-board receipt therefor.

While upon his journey, and upon the Grand Trunk Railway, the baggage car, in
which the trunks were, was destroyed. Cullom assigned to Talcott his claim
for personal baggage, which was stated to be "all my right, title and interest
in my claim against the Grand Trunk Railway Company," and Talcott brought
an action, as assignee of all the claims against the Wabash Railroad Company,
which was the successor of the Wabash Western Railway Company.

It did not appear that Cullom told the baggage agent that the samples belonged to
others; nor did it appear that the baggage agent had power to allow, or ever had
allowed, merchandise to be transported as such.

On an appeal from a judgment recovered by the plaintiff:

*Held,* that there could be no recovery for the samples.

That they had been taken as Cullom's baggage; had been checked as his baggage;
represented to be such, and paid for as such, and hence no contractual relation
was ever entered into by the Wabash Western Railway Company with Cullom,
as the agent of Talcott, to transport Talcott's merchandise.

That there could be no recovery for Cullom's personal baggage, because that claim,
as against the plaintiff, still remained in Cullom, and was not transferred by
an assignment of a claim against another corporation. (Van Brunt, P. J.,
dissenting.)

Liability of a railroad company issuing a ticket with coupons covering the
transportation of the purchaser over connecting lines, considered.

Appeal by the defendant, the Wabash Railroad Company, from
a judgment of the Supreme Court, entered in the office of the clerk
of the city and county of New York on the 9th day of June, 1892,

upon a verdict for the plaintiff for $566.74, after a trial at the New York Circuit before the court and a jury.

Also an appeal from an order denying the defendant's motion for a new trial, entered in said clerk's office on August 17, 1892.

The action was brought by James Talcott, as assignee of certain claims for baggage and merchandise, and as owner of certain merchandise alleged to have been destroyed by the negligence of the Wabash Western Railway Company, of which the defendant is the successor.

R. H. Cullom, who was a traveling agent for Talcott, and who was the person who checked the baggage, assigned to Talcott his claim for personal baggage, which assignment was stated to be of "all my right, title and interest in my claim against the Grand Trunk Railway Company." No other assignment from Cullom to Talcott appeared.

*G. F. Brownell,* for the appellant.

*C. F. Matthewson,* for the respondent.

VAN BRUNT, P. J.:

This action was brought by the plaintiff to recover, on his own behalf, and as assignee of various parties, damages for the loss in transit of alleged baggage, alleged to have been accepted by the Wabash Western Railway Company, the predecessor of the defendant, at Chicago, in April, 1889, for transportation to the city of New York.

The Wabash Western Railway Company, in combination with the Grand Trunk Railway Company and the West Shore Railway Company, formed a through line from Detroit to Chicago and New York, tickets being sold from Detroit or Chicago to New York; in which case there are coupon tickets, the coupon of each company being for its own portion of the road. On the 27th of April, 1892, one F. H. Cullom purchased at the Chicago office of the Wabash Western Railway Company, a coupon ticket from Chicago to New York and return over the route of the Wabash, Grand Trunk and West Shore Companies. The through fare of twenty-five dollars was paid by Cullom at the time of obtaining his ticket. Cullom was a commercial traveler in the employ of the plaintiff, and was

returning to New York after a trip to the Pacific coast, California and Oregon. The ticket purchased by him entitled him to have 150 pounds of personal baggage carried with him upon any train without extra compensation; while for his baggage in excess of that weight, an excess baggage charge is made at a rate per 100 pounds, according to the distance. When Cullom reached Chicago he had four trunks which he had brought from the Pacific coast. Three were the property of the plaintiff, and the fourth belonged to the American Hosiery Company, and The New Britain Company, and he was bringing them for these parties to deliver to them when he got to New York. In the three trunks belonging to the plaintiff, Cullom had some of his personal effects. Soon after purchasing his tickets, Cullom took these trunks to the depot, and had them checked from Chicago to New York as his baggage. When he arrived at the depot he went to the baggage-room, and had a conversation with a man marked "Baggage Agent." He presented his ticket, and told where he wanted the baggage checked to. After weighing them, the baggageman said : "They weigh light, don't they?" and he told him they were samples of underwear, and the baggageman made some reply which Cullom did not hear. He then figured up the excess of baggage, and told Cullom that it amounted to sixteen dollars, which he paid. Cullom further testified that he did not tell the baggageman that the trunk contained samples which were not his own, or he was not using in his own business; that he merely told him they were samples of underwear; that he did not tell him he was a commercial traveler; that he knew it was a passenger depot, and not a freight depot; that he took the trunks to carry with him, as baggage, on the train, and received a card-board receipt or excess check dated on that day, showing the payment of sixteen dollars for the transportation of the baggage in question, from Chicago. On April twenty-eighth, an accident occurred to the train in which Cullom had taken passage, by which the baggage car was destroyed while on the Grand Trunk Railway. This action was brought to recover the value of the baggage and merchandise contained in the four trunks, the causes of action having been assigned to the plaintiff. Upon the trial the court directed a verdict in favor of the plaintiff for the samples belonging to the plaintiff, and for the personal baggage of Mr. Cullom.

Prior to such direction the defendant's counsel asked the court to go to the jury upon the question whether there was a special contract made with the defendant, apart from the contract made upon the purchase of the ticket; and, also, upon the question whether the defendant agreed by the contract, upon the sale of the ticket, to carry the baggage to New York, and deliver it in New York; and, also, whether the property shown to have been destroyed was not destroyed in the hands of the Grand Trunk Railroad upon its line of route. These requests being denied, an exception was duly taken; and from the judgment entered upon said verdict, and from the order denying a motion for new trial, this appeal is taken.

We think, as far as the personal baggage of Cullom is concerned, the plaintiff had a right to recover. Cullom purchased a ticket to be transported from Chicago to New York, with his personal baggage not to exceed 150 pounds in weight. This contract he made with the defendant's predecessor; and he paid the price charged for the making of such a contract, and the furnishing of the transportation. We cannot see that the passenger, under the circumstances stated, has anything to do with the private arrangements which have been made between connecting lines. The original sale of the ticket makes the contract. The question of its being a coupon ticket is entirely immaterial, as that is undoubtedly a regulation between the connecting companies themselves, for the purpose of keeping track of the business done by each, and of the origin of the contract of transportation. The connecting railroads did not participate in the making of the contract; nor did they, as far as Cullom was concerned, assume any obligation in respect to his carriage, or in respect to the transportation of his baggage. The price paid was for the whole distance between Chicago and New York; and it would seem necessarily to follow that the defendant's predecessor, having made this contract to transport Cullom to New York, together with his baggage, he was not required to look to the agents of the defendant's predecessor in case of their failure to do their whole duty in the performance of this contract. This seems to be the principle which was enunciated in the case of *Burnell* v. *New York Central Railroad Company* (45 N. Y., 188); *Cary* v. *Cleveland and Toledo Railroad Company* (29 Barb., 35); *Burtis* v. *Buffalo and State Line Railroad Company* (24 N. Y.,

275); *Condict* v. *Grand Trunk Railway Company* (54 id., 505); *Sloman* v. *Great Western Railway Company* (67 id., 211).

The cases cited by the appellant in no way affect these authorities; that of *Isaacson* v. *New York Central* (94 N. Y., 278) being substantially an authority in favor of the views above expressed. In that case the plaintiff purchased tickets from the defendant from Niagara Falls to New York and return. He also held return tickets from Niagara Falls to New Orleans by the Mobile route, purchased at New Orleans; and there was no evidence that the defendant company was interested in that route. The plaintiff took the tickets above stated, presented them, with his baggage, to the defendant's baggage-master at New York, and requested him to check the baggage from New York to New Orleans. The baggage-master asked to see the tickets; examined them and thereupon gave the plaintiff checks to New Orleans. The plaintiff put them in his pocket without examining them. On the same day the plaintiff and his family commenced his return journey to New Orleans. On his arrival it was ascertained that the checks given at New York were given for what is called the Great Jackson route from Niagara Falls to New Orleans. It subsequently transpired that the plaintiff's baggage was sent over the route indicated by the checks, and was substantially destroyed by an accident at Ingaloo, Miss. The delivery of the baggage by the defendant at Niagara Falls to the agents of the Jackson route was a direct violation of the plaintiff's instructions and of the undertaking of the baggage-master on receiving the baggage.

The court held that the request to check over the Mobile route, assented to by him, constituted an agreement between the company and the plaintiff, unless the plaintiff's omission to examine the checks was contributory negligence; and the court reversed a nonsuit. The court say that there arises on the sale of a ticket a contract to carry the passenger and his baggage between the points indicated, and that the passenger has a right to assume that the baggage-master possesses the requisite authority to make all ordinary and usual arrangements with passengers in respect to the transportation of their baggage. It would, therefore, seem to follow that, by the sale of the ticket between Chicago and New York, and the checking of the baggage between these two points, the defendant's predecessor

became liable to carry out that contract, so far as the personal baggage of Cullom was concerned.

But, we think, a different question arises with respect to the merchandise contained in these trunks. It is claimed that there was a special contract entered into for the carrying of this merchandise, and that the baggage-master was informed that it was merchandise ; and that, therefore, a recovery could be had.

We think there are two answers to this claim. The first is that there is no attempt to show that the baggage-master was informed that the property belonged to anybody else than the passenger, and the sole undertaking of the railroad company was to transport Cullom the passenger and his baggage and not the merchandise of other people. And furthermore there was no undertaking whatever to carry merchandise as such. It is true Cullom swears he stated to the baggage-master that these trunks contained samples of underwear. But it does not appear that the baggage-master had any authority whatever to make any contract of affreightment, or to allow merchandise to be carried as freight. And it does not appear that he ever did exercise any such authority.

In the case of *Stoneman* v. *Erie Railway Company* (52 N. Y., 429), the transportation company demanded and received from the passenger compensation as freight for the transportation of packages containing merchandise, and a recovery was had expressly upon the ground that the transportation was paid for as merchandise and not as baggage, and there was no question raised in that case as to the authority of the agent of the transportation company. So in the case of *Sloman* v. *Great Western Railway Company* (67 N. Y., 211) it was held that where the company receives the trunks of a passenger with notice that they contain property other than personal baggage, and charges and receives extra compensation for their transportation, an agreement to carry the property as freight, may by the jury be inferred therefrom. But the authority of the baggage-master in that case to receive the trunks as freight was not raised, and upon the trial the court stated that the authority of the baggage-master seems to have been assumed, he being in the receipt given for the trunks as well as in the motion for the nonsuit designated as the agent of the defendant ; the simple question submitted to the jury being upon the claim that there was no evidence as to

whether the defendant's agent was notified that the baggage was other than ordinary baggage. This case clearly shows that if the company undertakes to carry other people's merchandise as freight they are liable as any common carrier would be, and that is all; and that such facts must appear from which it can be reasonably inferred by the jury that this contract of affreightment was entered into with knowledge of all the facts. In the case at bar there is no claim whatever that any statement was made that any part of this merchandise was owned by anybody else but by the passenger Collum; and there is nothing from which it can be inferred that the company undertook to carry this merchandise as freight. On the contrary, it is taken as baggage; it is checked as baggage; it is paid for as baggage, and it was represented to the company by Cullom that it was his baggage. Therefore, there was no contractual relation entered into by the predecessor of the defendant with Cullom as the agent of the plaintiff in respect to the merchandise belonging to him giving the most liberal construction to the testimony possible.

We think, therefore, that the court erred in directing a verdict, and that the complaint should have been dismissed in respect to the merchandise belonging to others than the passenger, and the question of notice as to any other merchandise which may have belonged to the passenger submitted to the jury.

The judgment and order should be reversed and new trial ordered, with costs to appellant to abide event.

O'BRIEN, J. :

I concur in result. As to the personal baggage of Cullom, assuming he had a claim therefor against defendant, he still retains it, and the plaintiff could not recover against the Wabash Company by virtue of an assignment made by Cullom of his claim against the Grand Trunk Railroad; and as plaintiff bases his claim upon the assignment from Cullom of a claim against the Grand Trunk, I fail to see how that is available in a suit against the Wabash. But I do not assent to the view that the Wabash Road is liable, as matter of law, for such baggage, having in mind the relation of the defendant road to the other connecting lines as shown by the testimony, and the coupon ticket issued to Cullom, with the condition thereon, which specified that

the relation of the Wabash was that of an agent to such roads, and limiting its liability for damages to such as occurred on its own route.

I think the appellant is right in his contention that the duty to provide for the safe carriage of the baggage is incident to, and is implied from the contract for the carriage of the passenger himself, without any specific agreement or separate compensation, and that where, as here, the contract between the parties is evidenced by the terms specified upon the ticket purchased by the passenger, the rights of the parties would be determined by such contract in the absence of some evidence showing that the passenger was prevented from seeing, or, in fact, did not read such conditions. Assuming that such conditions were brought home to the passenger, or that he became bound thereby, then what was said in *Auerbach* v. *New York Central and Hudson River Railroad Company* (89 N. Y., 281) would be applicable: "A separate contract was made for a continuous passage over each of the roads mentioned in the several coupons. Each company, through the agent selling the ticket, made a contract for a passage over its road, and each company assumed responsibility for the passenger only over its road. No company was liable for any accident or default upon any road but its own. This was so by the very terms of the agreement printed upon the ticket."

As to the samples belonging to plaintiff, in addition to the reasons assigned by the presiding justice, I think it was, at least, a question for the jury whether the damage occurred on the Grand Trunk Road; and if the jury found it did, the further question remained whether such samples were not carried upon an express contract evidenced by the conditions specified on the ticket by which the Wabash limited its liability for damages on its own route, holding, as to connecting lines, the relation of agent.

BARRETT, J.:

I concur in the result. In my judgment the plaintiff should have been nonsuited as to both causes of action. As to Mr. Talcott's own goods, I agree with the views expressed by the presiding justice. As to Cullom's baggage, I agree with Mr. Justice O'BRIEN, that the claim still exists in Cullom, and was not transferred to the plaintiff

by an assignment of a claim against another corporation. But I deem it unnecessary to pass upon the remaining question discussed by Mr. Justice O'BRIEN for the reason that the facts proved are insufficient to raise the question. There was no evidence that any coupon ticket was issued to Cullom by the defendant's predecessor. Cullom asked for a through ticket and paid for it. Upon the trial the defendant's counsel produced a coupon ticket and asked Cullom whether the ticket which he received was in that form. At first, Cullom said that the ticket he received was similar to that shown him, and that he *thought* his ticket was in that particular form. But subsequently he said he did not remember the form of his ticket, nor whether it was the same kind of ticket as that exhibited to him by counsel; that, after the accident, he read his ticket, and that he did not think there was anything on it with regard to the Wabash Company acting as agent for other companies. Finally, he was asked this question and gave this answer : " Q. This ticket which you had, was it of the form D. X. 325 ? Can you say now, after consideration, whether it was of this form of ticket, of which this is a copy ? A. I cannot tell; I don't know."

The form of ticket so produced by defendant's counsel upon the trial was not offered in evidence, but was merely marked for identification, and the limitation of liability claimed by the defendant was, therefore, unproved.

Thus the defendant's general liability, resulting from the sale of a through ticket, was the true measure of responsibility flowing from the facts. That general liability was not limited by any special contract actually proved, and, consequently, the rule stated by the presiding justice properly governs.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.