a transfer of the salt to one Shattuck. This transfer was shown to have been fraudulently made, by collusion between the directors of the salt company and Shattuck. The execution had been returned unsatisfied in part after the levy was made, and before the salt had been offered for sale under said execution. Before the defendant could be made liable in this action, the plaintiff was required to attempt, in good faith, to make its debts out of the assets of the company. This, the evidence tended to show, it failed to do.

The conclusion of the trial court that the pretended sale of the salt to Shattuck took place on the 23d day of February, 1893,— the same day, and presumably after, the company's commercial paper had gone to protest,—is fairly sustained by the evidence. The insolvency of the company was at the time unquestionably imminent, to the knowledge of its trustees, and the transfer of the salt to Shattuck was made by them in contemplation of the insolvency of the company.

It is suggested by the appellant's counsel that, had the salt been sold by the sheriff under the execution, there would not have been a sufficient amount realized therefrom to pay the plaintiff's execution in full. That may be true, but the plaintiff is attempting to enforce against the defendant a statutory liability. It is not a case for balancing probabilities. Without enlarging upon the facts which are so fully and clearly set out in the opinion of the trial judge (32 N. Y. Supp. 716), we are satisfied that his findings and conclusions were fully sustained by the evidence, and that the judgment should be affirmed. All concur.

---

(89 Hun, 492.)

### TALCOTT v. WABASH R. CO.

(Supreme Court, General Term, First Department. October 18, 1895.)

1. CARRIERS—LOSS OF BAGGAGE—CONNECTING LINES.

   A railroad company is not responsible for the loss of baggage on a connecting line over which it has checked the same, and for which it has been paid extra for overweight, where the round-trip ticket on which it checked the baggage had been sold by it several hours before so doing, and had a notice printed on its face that the company acted merely as the agent of connecting lines, and would not be responsible beyond its own line.

2. SAME—NATURE OF CARRIER'S OBLIGATION.

   The carrying of a traveler's baggage by a railroad company constitutes a mere incident to its contract to carry the traveler, and a recovery for the loss thereof will not be governed by rules applicable to carriers of goods.

Appeal from judgment on report of referee.

Action by James Talcott against the Wabash Railroad Company for loss of plaintiff's baggage. Plaintiff was nonsuited on the first, third, and fourth causes of action, and the complaint was dismissed on the merits as to the second cause of action, and plaintiff appeals. Affirmed.

The opinion of George C. Holt, Esq., to whom the cause was referred to hear and determine, is as follows:

When the plaintiff rested, the plaintiff's counsel elected to suffer a nonsuit as to the third and fourth causes of action; and, upon the defendant's motion, I dismissed the first cause of action. This left the second cause of action, being the claim for the loss of Cullom's personal baggage, alone remaining in the case. The substantial question raised by the defendant's testimony is whether the defendant, the Wabash Company, is responsible for the injury to Cullom's baggage which occurred on the Grand Trunk line. This question depends upon the question whether the Wabash Company contracted to carry Cullom from Chicago to New York, or simply contracted to carry him over its own line from Chicago to Detroit, and acted as agent for the Grand Trunk Company and the West Shore Company in respect to the contract which was made to carry him over these lines to New York.

When the case was before the general term, each of the judges wrote an opinion. Talcott v. Railroad Co., 66 Hun, 456, 21 N. Y. Supp. 318. As I understand these opinions, one judge held that the Wabash Company contracted to carry Cullom to New York; another, that it only contracted to carry him over its own line; and the third, that the form of the ticket was not proved, and therefore the question did not arise. Upon this trial the defendant has, in my opinion, proved that the ticket which Cullom bought was in the form of the ticket in evidence. The question, therefore, of the liability of the Wabash Company, under the contract proved upon this trial, does not appear to have been decided by the general term.

The material facts upon this question are these: On April 27, 1889, Cullom purchased at the city office of the Wabash Company in Chicago, for twenty-five dollars, a round-trip coupon ticket from Chicago to New York and return. This ticket had printed upon it that it was good for one first-class passage to New York and return, and that it was subject to the following contract: "In consideration of the reduced rate at which this ticket is sold, the bearer or holder of the same agrees to and with the several companies over whose lines this ticket entitles him to be carried as follows, to wit: First, that in selling this ticket the Wabash, St. Louis and Pacific Railway Company acts as agent and is not responsible beyond its own line," —together with other provisions. The main ticket had annexed six coupons, one providing for a trip to Detroit over the Wabash road, another from Detroit to Suspension Bridge over the Grand Trunk road, another from Suspension Bridge to New York over the West Shore road, and the remaining three coupons being the corresponding return coupons. Cullom, some hours later in the day, went to the Dearborn Street station in Chicago, presented the ticket to the baggage master, and had him check four trunks to New York, paying $16 for extra weight. These trunks contained, among other things, Cullom's personal baggage. Cullom took the checks for these trunks, and went aboard the train, leaving Chicago on the Wabash road, at three o'clock; and the trunks, having the duplicate checks upon them, were put aboard the same train. Cullom occupied a sleeping car on the train, owned by the Wagner Sleeping-Car Company, which was intended to go from Chicago to New York. None of the other cars of the train went beyond Detroit, the eastern terminus of the Wabash road. At Detroit Cullom's trunks were transferred to a baggage car owned by the Grand Trunk Company; and the train, made up of Grand Trunk cars, with the exception of the sleeping car in which Cullom was, was drawn by a Grand Trunk engine and manned by Grand Trunk employés. On the following morning, at a point on the Grand Trunk road, an accident occurred. The baggage car in which Cullom's trunks were took fire, and Cullom's baggage was destroyed.

Upon these facts, it seems to me clear that the Wabash Company was not responsible for the loss of Cullom's baggage, caused by the accident and fire on the Grand Trunk line, unless the Wabash Company contracted to carry Cullom from Chicago to New York. In the case of the delivery of goods to a common carrier for shipment to a point beyond its own line, the courts of different countries have differed as to the liability of the carrier accepting the goods. The English rule has always been that the carrier who accepts the goods is responsible to the shipper for their safe delivery, and this rule seems to have been followed in Illinois and some of the other states. Hutch. Carr. § 148, and Illinois cases cited in note. But the courts of New York and of many

other states and the United States supreme court hold that in the absence of proof of a special contract, if goods are delivered to a carrier to be sent to a point beyond the terminus of the carrier's line, the carrier performs its duty if it transports the goods to the end of its line, and delivers them in safety to the connecting carriers. Condict v. Railway Co., 54 N. Y. 500; Rawson v. Holland, 59 N. Y. 611; Jennings v. Railway Co., 127 N. Y. 438, 28 N. E. 394; Myrick v. Railroad Co., 107 U. S. 102, 1 Sup. Ct. 425.

The plaintiff claims that this question is to be decided by the law of Illinois, because the contract was made there. If this were a case of a shipment of goods, it would appear to be the law of Illinois, both under the decisions of its courts and the statute which has been put in evidence, that the Wabash road would be responsible. But I do not think that the decisions or statutes fixing the liability of carriers for the transportation of merchandise, under a bill of lading or receipt, necessarily govern this case. The contract to carry the baggage of a traveler is a mere incident to the contract to carry the traveler. A common carrier can, in the case of a passenger, as well as in the case of goods, make a special contract to carry beyond its own line. Quinby v. Vanderbilt, 17 N. Y. 306. But the general rule is that when a railroad company, without making any special contract, issues coupon tickets entitling a passenger to a continuous ride over the line of the company issuing the ticket and over connecting lines of other railroads, the first carrier is only responsible for the carriage of the passenger upon its own line, and acts merely as agent for each of the other lines in the sale of the coupon for each connecting line respectively. Milnor v. Railroad Co., 53 N. Y. 363; Kessler v. Railroad Co., 61 N. Y. 538; Auerbach v. Railroad Co., 89 N. Y. 281; Isaacson v. Railroad Co., 94 N. Y. 283; Poole v. Railroad Co., 35 Hun, 29; Central Trust Co. of New York v. Wabash, St. L. & P. Ry. Co., 31 Fed. 247; Hutch. Carr. § 577 et seq.

In my opinion, there is nothing in the circumstances of this case to take Cullom's case out of the general rule. He was an experienced commercial traveler. He purchased the ticket some hours before he had his baggage checked and took the train. There was nothing to prevent his reading the ticket, and nothing to prevent the general rule applying that its acceptance constituted a contract. The only facts tending to show that the Wabash Company contracted to carry Cullom to New York were that Cullom asked for a ticket to New York and return, and asked to have his baggage checked to New York, and paid the full amount due for the railroad ticket and for the extra weight of the baggage to New York. I do not think that these facts are sufficient to take the case out of the general rule. The accident occurred on the Grand Trunk road. The train was a Grand Trunk train, drawn by a Grand Trunk engine, manned by Grand Trunk employés. If the Wabash Company is responsible for the injury to Cullom's baggage, caused by the accident on the Grand Trunk road, it would have been responsible if Cullom had been injured or killed in the accident. It seems to me that no such claim could be maintained, in view of the above authorities. My conclusion is that the defendant is entitled to judgment as to the second cause of action on the merits, with costs.

Argued before VAN BRUNT, P. J., and FOLLETT and PARKER, JJ.

Theron G. Strong, for appellant.

George F. Brownell, for respondent.

PER CURIAM. The judgment appealed from should be affirmed, upon opinion of referee rendered upon decision of the case.